# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ERIC KELLEY,** | |
| Plaintiff, | Civ. No. 2:19-cv-17911 (WJM) |
| v. | |
| **RICCHARD REYES, LOUIS STELL, ROBERT SMITH, ESTATE OF MICHAEL FINER, ALEX NIEVES, PETER IURATO, TIMOTHY JORDAN, RAYMOND REID, ALBERT CLARK, in their individual capacities, RICHARD MUNSEY and VINCENT AMORESANO, in their official capacities, and THE CITY OF PATERSON,** | |
| Defendants. | |
| **RALPH LEE,** | |
| Plaintiff, | Civ. No. 2:19-cv-17936 (WJM) |
| v. | |
| **ALBERT CLARK, ESTATE OF MICHAEL FINER, PETER IURATO, TIMOTHY JORDAN, ALEX NIEVES, RAYMOND REID, RICHARD REYES, ROBERT SMITH, LOUIS STELL, and JOHN DOES #1-10, in their individual capacities, RICHARD MUNSEY and VINCENT AMORESANO, in their official capacities, and THE CITY OF PATERSON,** | OPINION |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs Eric Kelley and Ralph Lee, Jr. spent 24 years wrongfully incarcerated for the July 28, 1993 robbery of Victoria's Video in Paterson, New Jersey and murder of store clerk Tito Dante Merino—crimes they did not commit. Kelley Compl. ¶ 1, ECF No. 1, Lee Compl. ¶ 1, ECF No. 1. After DNA testing proved in 2014 that Eric Dixon had worn the distinctive green plaid baseball hat left at the crime scene, Dixon confessed to several family members that he, acting alone, robbed Victoria's video and murdered Merinio. Kelly Compl. ¶ 2, Lee Compl. ¶ 2. In separate actions, Plaintiffs Kelley and Lee bring various civil rights and related claims against individual Defendants Vincent Amoresano, Albert Clark, the Estate of Michael Finer, Peter Iurato, Timothy Jordan, Richard Munsey, Alex Nieves, Raymond Reid, Richard Reyes, Louis Stell, Robert Smith, ("individual Defendants"), Amoresano and Munsey in their official capacities, and the City of Paterson, for their wrongful incarceration.[1] Before the Court are five motions to dismiss:

1. Defendants City of Paterson, Munsey, and Amoresano's Motion to Dismiss, Kelley ECF No. 25, Lee ECF No. 29, in which Defendants Stell, Clark, Iurato, Nieves, the Estate of Michael Finer join, Kelley ECF Nos. 51, 52, 55-59, 62, 63, Lee ECF Nos. 41, 42, 45-49, 51, 54;
2. Defendant Jordan's Motion to Dismiss, Kelley ECF No. 54, in which Defendants Nieves and the Estate of Michael Finer join, Kelley ECF Nos. 59, 62, Lee ECF Nos. 49, 51, 54;
3. Defendant Reid's Motion to Dismiss, Kelley ECF No. 61, in which Defendants Nieves and the Estate of Michael Finer join, ECF Nos. 59, 62, Lee ECF Nos. 49, 51, 54;
4. Defendant Reyes's Motion to Dismiss, Lee ECF No. 50, in which Defendants Nieves and the Estate of Michael Finer join, Kelley ECF Nos. 59, 62, Lee ECF Nos. 49, 51, 54;
5. Defendant Smith's Motion to Dismiss, Lee ECF No. 53, in which Defendant Nieves and the Estate of Michael Finer join, ECF Nos. 59, 62, Lee ECF Nos. 49, 51, 54.[2]

There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, all motions are **GRANTED IN PART and DENIED IN PART**.

**I.   BACKGROUND**[3]

Around 1:25 p.m. on July 28, 1993, Eric Dixon entered Victoria's Video in Paterson, New Jersey, wearing a backwards green plaid baseball hat and, after pretending

---

[1] Plaintiff Lee also names as defendants John Does 1-10.
[2] All five motions are substantially similar and, at times, identical to one another.
[3] The facts alleged in the Complaints, ECF Nos. 1, are accepted as true for the purposes of this Opinion. The Court also considers matters of public record and documents incorporated into the AC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

to be a customer, murdered the 22-year old clerk, Tito Dante Merino. Kelley Compl. ¶ 26, Lee Compl. ¶ 27. After stabbing and beating Merino to death, Dixon took $150 from the cash register, a VCR, three car radios, and five watches. *Id.* at ¶ 28, ¶ 29. Defendants Lieutenant Albert Clark and Sergeant Louis Stell assigned Defendants Detective Richard Reyes as lead detective for the Victoria's Video homicide, and Detective Defendants Raymond Reid, Detective Michael Finer,[4] Detective Robert Smith, Detective Peter Iurato, Detective Alex Nieves, and Detective Timothy Jordan to assist. *Id.* at ¶¶ 32-33, ¶¶ 32-33.

Although initial interviews with three witnesses—Miguel Victoria, the owner of Victoria's Videos, Majdi Mousa, who arrived at the store around 1:30 p.m. on July 28, 1993 to drop off a video tape, and Carmen Paredes, who stopped by the video store around 1:25 on July 28, 1993—supported the theory that the perpetrator was a lone man wearing a green plaid hat, the Defendant officers eventually endorsed a theory that multiple individuals were involved on the basis of two tips that were either fabricated or which the officers should have known was unreliable. *Id.* at ¶¶ 35-50, ¶¶ 35-50. On the basis of these tips, Defendants separately located Plaintiffs Kelley and Lee, who both agreed to accompany them to the station. *Id.* at ¶¶ 48-50, ¶¶ 48-50.

On July 30, 1993, Defendants Reyes, Jordan, Smith, Finer, Nieves, Iurato, and Stell interrogated Kelley and Lee in different combinations for hours. *Id.* ¶ 51, ¶ 51. Mr. Kelley, who had serious cognitive limitations, was subjected to physical force and threats, and eventually falsely admitted to participating in the crime. *Id.* at ¶¶ 52-59, ¶¶ 52-59. After Mr. Kelley purportedly confessed, Defendants had Kelley sign a written form waiving his *Miranda* rights, as well as a six-page written confession. *Id.* at ¶¶ 57-58, ¶¶ 57-58. The confession incorporated factual details known to the police that were fed to Kelley, other details consistent with their theory of the case, and information provided by Kelley that was false or that could not be corroborated. *Id.* at ¶¶ 60-63, ¶¶ 60-63. Mr. Lee also had serious cognitive limitations. Lee Compl. ¶ 65. Although Lee denied any involvement in the homicide when confronted with Mr. Kelley's confession, he agreed to sign a statement confessing to the crime after Defendant Nieves punched Lee and the other Defendants threatened violence. Kelley Compl. ¶¶ 64-74, Lee Compl. ¶¶ 64-75. Like Mr. Kelley's confession, Mr. Lee's confession attributed to him details known only to the police or details consistent with their incorrect theory of the case. *Id.* at ¶¶ 72-74, ¶¶ 73-75.

James Thompson, one of the eyewitnesses who encountered Eric Dixon in the video store during the robbery, viewed two photo lineups that included photos of Mr. Kelley and Mr. Lee. *Id.* at ¶ 75, ¶ 76. Although Mr. Thompson was unable to identify the perpetrator, he commented to Defendant Reyes that he recognized Mr. Kelley and Mr. Lee from the neighborhood but that he did not know the man he encountered during the robbery. *Id.* at ¶¶ 75-77, 76-78. Defendant Reyes intentionally excluded this exculpatory statement from his report. *Id.* at ¶ 77, ¶ 78. Defendants later either used direct or indirect

---

[4] The Estate of Michael Finer is named in Plaintiffs' suits.

suggestion to cause another eyewitness, Carmen Paredes, to identify Mr. Lee in similar photo lineups. *Id.* at ¶ 78, ¶ 79.

Plaintiffs were indicted on October 26, 1993. *Id.* at ¶ 79, ¶ 80. At their respective trials, both Mr. Kelley and Mr. Lee attempted to suppress their confessions on the basis that they were not voluntary as well as other evidence they claimed was false. *Id.* at ¶ 82, ¶ 84. On February 7, 1996, the jury acquitted Mr. Kelley of murder, but found him guilty of felony murder, conspiracy, robbery, and possession of a weapon for an unlawful purpose. *Id.* at ¶ 86, ¶ 82. On March 15, 1996, he was sentenced to life in prison with a mandatory 30 years of parole ineligibility. *Id.* On April 10, 1996, Mr. Lee was convicted of murder, felony murder, robbery of the first degree, conspiracy, possession of a weapon. *Id.* at ¶ 88, ¶ 87. Mr. Lee was sentenced to life in prison with a mandatory 30 years of parole ineligibility followed consecutively by 20 years in prison with 10 years of parole ineligibility. *Id.* In 2014, DNA testing established a major contributor DNA profile from seven critical areas of the hat and found that at least 99.9% of the DNA found in each of those areas belonged to the same unknown male, indicating that "Unknown Male #1 was the habitual wearer of the hate." *Id.* at ¶ 93, ¶ 91. When the profile was uploaded into the FBI's Combined DNA Index System, it was conclusively matched to Eric Dixon. *Id.* at ¶ 94, ¶ 92. Dixon confessed that he murdered Tito Dante Merino to his brother, Jeffrey Dixon, on multiple occasions. *Id.* at ¶ 95, ¶ 93. Jeffrey Dixon disclosed these confessions to counsel for Plaintiffs. *Id.* at ¶ 96, ¶ 94. Mr. Kelley and Mr. Lee's convictions were vacated on September 15, 2017. *Id.* at ¶ 98, ¶ 96. After losing its appeal, the State abruptly moved to dismiss the indictments and abandoned plans to retry Plaintiffs. *Id.* at ¶¶99-101, ¶¶ 97-99. The Court entered the motion to dismiss on April 6, 2018. *Id.* at ¶ 101, ¶ 99. As of the filing of this opinion, to the Court's knowledge, Eric Dixon has not been charged with any crime and the investigation into the murder of Tito Dante Merino is closed.

Plaintiffs assert twelve causes of action in their Complaint:[5]

- Count I for Mr. Kelley: 42 U.S.C. § 1983 deprivation of liberty without due process of law and denial of a fair trial by fabricating evidence and withholding material exculpatory and impeachment evidence, against all individual Defendants, *id.* at ¶¶ 134-38;
- Count I for Mr. Lee: 42 U.S.C. § 1983 malicious prosecution in violation of the Fourth and Fourteenth Amendments, against all individual defendants, *id at* ¶¶ 132-38;
- Count II for Mr. Kelley: 42 U.S.C. § 1983 claim for violation of Plaintiff's right against self-incrimination in violation of the Fifth and Fourteenth Amendments, against Defendants Reyes, Stell, Smith, Jordan, and Estate of Michael Finer, *id.* at ¶¶ 139-45;

---

[5] While the Count sequences of Plaintiffs' Complaints differ, they are identical in all material respects.

4

- Count II for Mr. Lee; 42 U.S.C. § 1983 deprivation of liberty without due process of law and denial of a fair trial by fabricating evidence, withholding material exculpatory and impeachment evidence, and deliberately failing to conduct a constitutionally adequate investigation, against all individual Defendants, *id.* at ¶¶ 138-43;
- Count III for Mr. Kelley: 42 U.S.C. § 1983 malicious prosecution in violation of the Fourth and Fourteenth Amendments, against all individual Defendants, *id.* at ¶¶ 146-51;
- Count III for Mr. Lee: 42 U.S.C. § 1983 claim for violation of Plaintiff's right against self-incrimination in violation of the Fifth and Fourteenth Amendments, against Defendants Reyes, Stell, Iurato, and Nieves, *id.* at ¶¶ 144-49;
- Count IV for both: 42 U.S.C. § 1983 Civil rights conspiracy, against all individual Defendants, *id.* at ¶¶ 152-55, ¶¶ 150-53;
- Count V for both: 42 U.S.C. § 1983 failure to intervene, against all individual Defendants, *id.* at ¶¶ 156-59, ¶¶ 154-57;
- Count VI for both: 42 U.S.C. § 1983 supervisory liability claim, against Defendants Clark, Stell, and Reid, *id.* at ¶¶ 160-65, ¶¶ 158-63;
- Count VII for both: 42 U.S.C. § 1983 municipal liability claim, against Defendant City of Paterson, *id.* at ¶¶ 166-70, ¶¶ 164-68;
- Count VIII for both: malicious prosecution under New Jersey state law, against all individual Defendants and the City of Paterson, *id.* at ¶¶ 171-74, ¶¶ 169-71;
- Count IX for both: intentional infliction of emotional distress, against all individual Defendants and the City of Paterson, *id.* at ¶¶ 175-78, ¶¶ 172-75;
- Count X for both: negligence and gross negligence, against all individual Defendants and the City of Paterson, *id.* at ¶¶ 179-83, ¶¶ 176-80;
- Count XI for both: negligent supervision and training, against Defendants Stell, Clark, Reid, and the City of Paterson, *id.* at ¶¶ 184-87, ¶¶ 181-84;
- Count XII for both: violation of the New Jersey Civil Rights Act, against all individual Defendants and the City of Paterson, *id.* at ¶¶ 188-93, ¶¶ 185-86.

The cases were consolidated for discovery purposes only. Kelley ECF No. 10, Lee ECF No. 12. Defendants move to dismiss Plaintiffs' complaints pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Kelley ECF No. 25 at 1-3, 54 at 1-2, 61 at 1-2, Lee ECF No. 50 at 1-3, 53 at 1. Plaintiffs agree to dismiss their state-law malicious prosecution claim against the City of Paterson, Count VIII. Pls.' Resp. 19, Kelley ECF No. 67, Lee ECF No. 57. Defendants' Motions to Dismiss are **GRANTED** as to Count VIII. Count VIII of Plaintiffs' Complaints is **DISMISSED WITH PREJUDICE**. Plaintiffs now clarify that they do not pursue any claims against Defendants Munsey or Anoresano in their individual capacities and voluntarily dismiss their official-capacity claims against these Defendants. Pls.' Resp. 11, Kelley ECF No. 67, Lee ECF No. 57. Defendants Munsey and Amoresano's Motions to Dismiss are **GRANTED**. Plaintiffs' Complaints are **DISMISSED WITH PREJUDICE** as to Defendants Richard Munsey and Vincent Amoresano only.

5

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). "A Rule 12(b)(6) dismissal is appropriate if, as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989).

Although a complaint need not contain detailed factual allegations, "a plaintiffs obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The Third Circuit requires district courts to conduct a three-part analysis when reviewing a complaint for dismissal for failure to state a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Finally, "where there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (footnote omitted).

## III. DISCUSSION

Defendants argue that Plaintiffs fail to state a cause of action under 12(b)(6) for five general reasons: (1) their claims are untimely; (2) Plaintiffs fail to meet the "favorable termination" element of malicious prosecution claims; (3) Plaintiffs have not plausibly pled each of their claims; (4) Plaintiffs coerced confession claims are barred; (5) Plaintiffs' state law claims are barred by the New Jersey Tort Claims Act. The Court addresses each contention.

### A. Whether Criminal Proceedings Against Plaintiffs Were Favorably Terminated

To assert a Fourth Amendment malicious prosecution claim, a plaintiff must establish five elements: (1) a defendant initiated a criminal proceeding against the plaintiff; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007). As noted above, Plaintiffs have abandoned their malicious prosecution claim against the City of Paterson. Defendants argue that Plaintiffs' criminal prosecutions were not terminated favorably. While the parties spill much ink on this question, the Court finds that it is not a close one.

"The element of favorable termination is established by showing that the proceeding ended in any manner that indicates the innocence of the accused, which can be satisfied when charges are formally abandoned by way of a *nol pros*." *Geness v. Cox*, 902 F.3d 344, 356 (3d Cir. 2018). For the sake of argument, the Court considers the Passaic County Prosecutor's press release offered by Defendants, in which the prosecutor notes that the passage of time would make re-trying Plaintiffs difficult and that Plaintiffs already served lengthy prison sentences—both reasons for finding that a grant of *nolle prosequi* is not a favorable termination. *See Donahue v. Gavin*, 280 F.3d 371, 384 (3d 2002). The Court also takes into account that no Court has found either Plaintiff innocent of the crime for which they were prosecuted and that in granting a new trial, the trial court explicitly stated: "I wish to emphasize that this decision in no way, shape or form, is to be considered that my opinion is that the defendants are not guilty." *See* Exhibit C to Certification of Victor A. Afanador, Eq. Prosecutor's Press Release).

The evidence that Defendants bring before the Court are indicia of whether the cases against Plaintiffs ended in a way that indicates their innocence. But this evidence does not overwhelm the compelling events as pled in Plaintiffs' complaints that resulted in vacatur of Plaintiffs convictions, namely that DNA testing and a subsequent confession showed that on July 28, 1993, Eric Dixon entered Victoria's Video in Paterson, New Jersey, wearing a backwards green plaid baseball hat and murdered the 22-year old clerk, Tito Dante Merino. Additionally, the prosecutor's stated reasons for not re-trying Plaintiffs may bear little relationship with its true reasons. Notwithstanding the prosecutor's press release and qualifications in previous judicial opinions as to Plaintiff's innocence, the evidence which indicates their innocence was inevitably intertwined in their *nolle prosequi* disposition. Plaintiffs have sufficiently pled that the criminal proceedings against them ended in their favor to survive at a Rule 12(b)(6) challenge.

### B. Timeliness

#### 1. *Plaintiffs' § 1983 Claims*

Defendants argue that: (1) Section 1983 borrows the statute of limitations from state personal injury torts; (2) personal injury tort claims in New Jersey have a two-year

7

statute of limitations; and (3) the statute of limitations begins to run at the time of the last event necessary to complete the tort and when the plaintiff knew or should have known that he or she suffered a constitutional injury. Kelley ECF Nos. 25 at 21-24, 54 at 6-9, 61 at 5-7, Lee ECF Nos. 50 at 6-10, 53 at 5-7. Consequently, they contend that because Plaintiffs were indicted on October 26, 1993, the latest date that they could have brought suit for their wrongful convictions was October 26, 1995.[6] *Id.* This is wrong.

Plaintiffs agree that the relevant statute of limitations is two years and that the statute of limitations begins to run at the time of the last event necessary to complete the tort and when the plaintiff knew or should have known he or she suffered a constitutional injury, but disagree on the accrual date. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court concluded that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90; *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016). The first order vacating Plaintiffs' conviction was entered on September 15, 2017 by the New Jersey Superior Court. Plaintiffs contend that the vacatur became final when it was upheld by the New Jersey Appellate Division on March 12, 2018. Plaintiffs filed suit on September 11, 2019, less than two years after the first order vacating their conviction.

In two cases unrelated to *Heck*, *McDonough v. Smith*, 139 S. Ct. 2149 (2019) and *Wallace v. Kato*, 549 U.S. 384 (2007), the Supreme Court instructed that to determine the accrual date of claims seeking damages for wrongful detention, a court must (1) determine whether the most analogous tort is false imprisonment or malicious prosecution, and then (2) incorporate that analogous tort's accrual rules. *McDonough,* 139 S. Ct. at 2156-58; *Wallace*, 549 U.S. at 388-89. For claims that "challenge the integrity of criminal prosecutions undertaken pursuant to legal process," the closest analogy is malicious prosecution, "a type of claim that accrues only once the underlying criminal proceedings have resolved in the plaintiff's favor." *McDonough*, 139 S. Ct. at 2156; *see also Heck*, 512 U.S. at 484; *Wright*, 229 F. Supp. 3d at 331–32 (applying *Wallace* paradigm to hold § 1983 claims involving defendants' "wrongful use of the trial process"—including fabrication, *Brady*, and coerced confession claims—are most analogous to malicious prosecution). By contrast, claims analogous to false imprisonment, which challenge detention without any legal process, accrue when the unjustified detention ends, such as when legal process is initiated with an arraignment. *See Nash v. Kenney,* 784 Fed App'x 54, 57 (3d Cir. 2019) (per curiam). In addition to their fabrication claims, Plaintiffs' § 1983 claims attribute their wrongful convictions to Defendants' withholding of *Brady* evidence, violation of the privilege against self-incrimination, civil rights conspiracy, failures to intervene, and supervisory and municipal liability. Here, like in *McDonough*, there is "not a complete and present cause of action to bring a fabricated-evidence challenge to criminal proceedings while those

---

[6] Defendant Reyes allows for the possibility that the statute of limitations lapsed in1998, two years after Plaintiffs were found guilty at trial in 1996. Lee ECF No. 50 at 9.

criminal proceedings are ongoing." *McDonough*, 139 S. Ct. at 2158 (internal quotations omitted).

The Court holds that under either the *Heck* or *McDonough* and *Wallace* framework, because Plaintiffs' claims accrued on September 15, 2017 at the earliest, and they filed suit on September 11, 2019—within the two year statute of limitations period—their claims are timely.

### 2. Plaintiffs' State Law Claims

Defendants argue on reply that (1) Plaintiffs did not receive a favorable termination of their convictions and so they are therefore time barred; (2) Plaintiffs' state law claims and claims for intentional infliction of emotional distress are time barred; (3) Plaintiffs' state law claims for negligent supervision and training, as well as negligence and gross negligence are time barred. For the reasons stated above, the Court holds that Plaintiffs received a favorable termination of their convictions and consequently, their claims for malicious prosecution are timely. Kelley ECF Nos. 74 at 1-3 & 74 at 1-6.

Plaintiffs' New Jersey Civil Rights Act ("NJCRA") claims are timely because their § 1983 claims are timely. The NJCRA "was modeled after Section 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution." *Marshall v. Keansburg Borough*, No. 13-cv-0533 (JAP) (TJB), 2013 WL 6095475, at *9 (D.N.J. Nov. 20, 2013). "The NJCRA is interpreted as analogous to § 1983." *Szemple v. Corr. Med. Servs.*, 493 Fed App'x 238, 241 (3d Cir. 2012).

Here, Plaintiffs' complaints allege common-law torts that arise out of their wrongful convictions. For instance, their complaints allege that Defendants were negligent in supervising and training officers such that they deprived them of their rights in a criminal case from which they were convicted. Where "claims alleging negligent supervision and negligent hiring are dependent . . . upon a finding of constitutional violation in [an underlying] proceeding," they are premature until the underlying sanction or conviction has been "otherwise invalidated." *Rosario v. Brown*, No. 05-cv-3240 (JAP), 2006 WL 383703, at *4 (D.N.J. Feb. 17, 2006). Similarly, Plaintiffs' complaints allege that their negligence and IIED claims also arise out of their wrongful convictions. Under *Heck*'s principle, the statutes of limitations for these claims are similarly tolled until there is a favorable termination.

Defendants cite several cases for the proposition that the *Heck* bar does not apply to the state common law claims. These cases are inapposite. Defendants cite *Collinson v. City of Philadelphia*, No. CIV.A. 12-6114, 2013 WL 5707802, at *5 (E.D. Pa. Oct. 21, 2013), in which Court found that *Heck* did not bar state law claims because these claims did not question the validity of Plaintiff's conviction, not because *Heck* does not apply to state law claims. *Id.* Defendants cite *Love v. New Jersey State Police*, No. CV141313FLWTJB, 2016 WL 3046257, at *12 (D.N.J. May 26, 2016), which involved lack-of-legal process claims, like selective enforcement, illegal search and seizure, deliberate indifference, and false arrest, and false imprisonment. As noted above,

9

however, under *Wallace*, 549 at 387-91, these claims are analyzed differently from claims like Plaintiffs' that challenge the integrity of criminal prosecutions. While Plaintiffs in *Love* failed to cite to "any New Jersey cases providing tolling in even remotely comparable circumstances . . . ," Plaintiffs here cite to two cases where New Jersey courts applied *Heck* to state law causes of action related to wrongful conviction claims: Rosario, 2006 WL 383703, at *4 and *Alampi v. Russo*, 785 A.2d 65, 70 (N.J. App. Div. 2001) (applying *Heck* to hold that an intact conviction prevented a plaintiff's negligence suit against his criminal defense attorney). Thus Plaintiffs' state claims accrued with their federal claims and are timely.

### C.  Whether Plaintiffs Have Plausibly Pled Each of Their Claims

In sum, Defendants argue that Plaintiffs fail to plausibly plead any of their claims consistent with the strictures of Rule 12(b)(6). The Court disagrees. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 556).

#### 1. Monell Claims

"[A] § 1983 claim against a municipality may proceed in two ways. A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Perry*, 930 F.3d at 105 (citing *Estate of Roman*, 914 F.3d at 798–99, and *Monell*, 436 U.S. at 694). The municipality's "failure or inadequacy" can be in training or "related to supervision and discipline of its police officers." *Id.* These two avenues are distinct: "a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an unconstitutional policy or custom, and a plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affect." *Id.* at 106. Plaintiffs' complaints are replete with detailed allegations regarding the PPD's customs, policies, and practices of unconstitutional conduct and its culture of impunity allowing officers who engaged in egregious misconduct to go unsupervised and undisciplined throughout the 1980s and 1990s. For example, an editorial board described the Paterson Police Department abuses as "so common in Paterson that they've become part of the city fabric," and noted the abject failure of city officials to intervene, Kelley and Lee ECF No. 1 at ¶ 111–12; in addition to at least seventeen separate federal civil rights suits, this pattern led to a federal investigation and some criminal charges against officers, *id.* at ¶¶ 115, 118.

Under the "failure-or-inadequacy" theory of liability, a plaintiff need not plead "an unconstitutional municipal policy or custom" but must show "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 105–06. "A plaintiff sufficiently pleads deliberate indifference by showing that (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the

wrong choice by an employee will frequently cause deprivation of constitutional rights." *Estate of Roman*, 914 F.3d at 798. Plaintiffs have provided various examples of Paterson Police Department officers' "mishandling" interactions with suspects and citizens in the 1980s and 1990s, resulting in the "deprivation of [their] constitutional rights." *Forrest*, 930 F.3d at 106; *see* Kelley and Lee ECF No. 1 at ¶¶ 109-10, 111-13, 116-18, 120, 125.

Plaintiffs have also sufficiently pled *Monell* claims against the City under a separate theory: that during the 1980s and 1990s, the PPD had "a pattern, practice, and custom of violating the constitutional rights of criminal suspects and citizens, including systemic violations of the Fourth and Fourteenth Amendments"—and, relatedly, a pattern, practice, and custom of "failing to take appropriate disciplinary or other corrective actions" against officers who engaged in such violations. Kelley and Lee ECF No. 1 at ¶¶ 124–25. A plaintiff can prevail on a "custom" claim "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law" and by establishing an "affirmative link" between the custom and the particular constitutional violation alleged. *Estate of Roman*, 914 F.3d at 798. No showing of deliberate indifference is necessary for this type of municipal liability. *Forrest*, 903 F.3d at 105–06. Plaintiffs have also adequately pled that these policymakers took no action whatsoever to curb the Department's deeply embedded misconduct, *id.* at ¶ 113, and that this culture of impunity caused the egregious constitutional violations engaged in by at least eight different officers in the investigation and interrogations of Mr. Kelley and Mr. Lee leading to their wrongful convictions, *id.* ¶ 128.

### *2. State-law Claims for Negligent Supervision and Training*

"The New Jersey Appellate Division has held that a cause of action for negligent training and supervision can exist under the New Jersey Tort Claims Act where a police department knew or should have known of a dangerous propensity in a police officer." *Estate of del Rosario v. Paterson Police Dep't*, 14-cv-5167 (WJM), 2015 WL 1759473, at *5 (D.N.J. Apr. 17, 2015) (Martini, J.) (citing Denis v. City of Newark, 307 N.J. Super. 304, 314 (App. Div. 1998)). Plaintiffs have offered detailed factual allegations regarding the City's failure to train, supervise, and discipline officers, allowing the individual police officers in this case to act with impunity in violating Plaintiffs' constitutional rights. *See* Kelley and Lee ECF No. 1 ¶¶ 125–126, 128, 161–62, 164– 65, 185–86. These allegations include that "the PPD and its policymakers were on notice" of "recurring constitutional violations" and "the strong likelihood that constitutional rights would be violated as a result of failing to adopt and implement systems, policies, training, supervision or discipline in areas where the need for such things to occur was obvious." *Id.* at ¶ 127. The complaints also allege that Defendants Reid, Stell, and Clark "knew or should have known that their employees exhibited dangerous characteristics, such that it was reasonably foreseeable that they would harm others," *Id.* at ¶ 185; that those Defendant supervisors "failed to exercise reasonable care in their supervision of their employees," *Id.* at ¶ 185; that those Defendant supervisors and the City of Paterson "had

11

a duty to train their employees" and "failed to provide proper training to their employees." *Id.* at 187.

### 3. *State-law Claims for Intentional Infliction of Emotional Distress*

"In New Jersey, IIED consists of 'intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe.'" Ebuzor-Onayemi, 2017 WL 1377640, at *4 (Martini, J.) (quoting Tarr v. Ciasulli, 853 A.2d 921, 924 (N.J. 2004)). Fabricating evidence and causing false legal process is a basis for an IIED claim. *See, e.g.*, *Hill v. N.J. Dep't of Corr. Com'r Fauver*, 776 A.2d 828, 843 (N.J. App. Div. 2001) (finding that "conspir[ing] to file a fabricated claim" can be a basis for an IIED claim); *R.K. v. Y.A.L.E. Schools, Inc.*, 621 F. Supp. 2d 188, 199 (D.N.J. 2008) (holding that "maliciously . . . fabricating a fictitious account" of a crime and filing a false complaint can be a basis for an IIED claim). Here, the complaints allege Defendants intentionally coerced false confessions from Plaintiffs, Kelley and Lee ECF No. 1 at ¶¶ 4, 51–74, 135, 140; fabricated other inculpatory evidence including an "anonymous tip" and a false identification from an eyewitness, *id.* at ¶¶ 4, 48, 64–74, 75–78, 135; and concealed evidence and misrepresented their misconduct to prosecutors up until at least April 2018, *id.* at ¶¶ 5, 82, 97, 100.

### 4. *Malicious Prosecution Claims Against Individuals*

Defendants argue that Plaintiffs have not adequately pled that they acted with malice. But "[a]lleg[ing] that the defendants know or should have known that the evidence was unreliable or inadequate" is sufficient to show malice. *See Evans*, 2016 WL 2742862 at *15. Malice can also be "inferred from the lack of probable cause." *Melillo v. Elizabeth Bd. of Educ.*, No. 11-cv-4887 (SDW) (MCA), 2012 WL 6725837, at *6 (D.N.J. Dec. 27, 2012). Here, Plaintiffs have alleged Defendants Jordan and Reid together fabricated a "tip," Kelley and Lee ECF No. 1 ¶¶ 45–46, 48, and that Reid and other Defendants arbitrarily stopped Plaintiffs and asked them to come to the station based on this fabricated "tip." *Id.* at ¶ 50. At the station, Jordan and others interrogated Plaintiffs for hours using physical abuse, threats of violence, and other coercive measures to coerce and fabricate a "confession." *Id.* at ¶¶ 51–59. The Complaint also alleges that Defendant fabricated Plaintiffs' confessions. *Id.* at ¶¶ 54, 57-58, 135, 140. The allegations are sufficient.

### 5. *Civil Right Rights Conspiracy Claims Against Individuals*

A civil rights conspiracy claim requires: "(1) the existence of a conspiracy; (2) an agreement or meeting of the minds to violate constitutional or civil rights; and (3) a deprivation of those right in furtherance of the conspiracy." *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 386–87 (E.D. Pa. 2018). Where a complaint alleges that a defendant officer "contributed to the false story about the murder, which was then used to arrest and convict" the plaintiff, it properly alleges that officer "was part of a civil rights conspiracy." *Id.* at 387. Here, Plaintiffs allege that Defendants Jordan and Reid fabricated a tip together. Kelley and Lee ECF No. 1 ¶ 48. Defendants then relied on that fabricated tip to bring Plaintiffs to the police precinct, *id.* at ¶ 49, where Defendants

12

coerced false confessions that were used to arrest and convict Plaintiffs. *Id.* at ¶¶ 48–50, 51–74. The complaints additionally allege that Reid, who identified Mr. Kelley to come down to the police station based on the "tip", supervised the acts taken by the PPD detectives on the case. *Id.* ¶ 163. Defendant Reyes and Smith were part of the coercive interrogation and fabricated a written statement purporting to accurately document Mr. Kelley's "confession." *Id.* at ¶¶ 54-58, 135, 140. Reyes additionally created a false report claiming that Mr. Kelley had voluntarily confessed, *id.* at ¶¶ 59, 79; intentionally suppressed exculpatory evidence from one eyewitness, *id.* at ¶¶ 75-77; and fabricated a purportedly positive identification from another eyewitness, *id.* at ¶¶ 78, This is sufficient.

### 6. *Entitlement to Qualified Immunity*

The allegations detailing how these Defendants intentionally coerced confessions, fabricated evidence (including the "tip," an eyewitness identification, and written statements from Mr. Kelley and Mr. Lee), and hid material exculpatory and impeachment evidence foreclose a finding of qualified immunity at this time. Kelley and Lee ECF No.1 at ¶¶ 48–50, 51–57, 59, 79, 135, 147–48, 172. If these allegations are true, these actions clearly violated Plaintiffs' due process rights to a fair trial and against self-incrimination. *Halseyv. Pfeiffer*, 750 F.3d 273, 293 (3d Cir. 2014) ("We emphatically reject the notion that due process of law permits the police to frame suspects. Indeed, we think it is self-evident that a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process.").

### 7. *Supervisory Liability and Failure to Intervene Claims against Defendant Reid*

"If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). The complaints allege that Defendant Reid was an acting Sergeant of the PPD at all relevant times, Kelley and Lee ECF No. 1 at ¶ 20; that he was assigned to assist in the Merino homicide, *id.* at ¶¶ 32–33; and that he directly supervised the investigate acts taken by PPD officers in this case, *id.* at ¶ 163. Moreover, the complaints allege that Reid was personally involved in the investigation: that he fabricated the tip on which Plaintiffs were brought to the police precinct, *see id.* at ¶ 48; and that he investigated and failed to corroborate Mr. Kelley's coerced confession, *see id.* at ¶¶ 62(a), (b). It further alleges that he did not adequately train, supervise, or discipline Defendants detectives, allowing them to violate constitutional rights with impunity. *Id.* at ¶ 161. Taken as true, as they must be, these allegations are sufficient at this stage.

### D. **Whether Plaintiffs' Coerced Confession Claims May Proceed**

Defendants Jordan and Reyes argue that Plaintiffs' § 1983 coerced confession claims are deficient on two grounds: (1) they allege that Mr. Kelley was not in custody for *Miranda* purposes during his interrogation; this argument assumes away the well-

13

pleaded allegations of the complaints and (2) they argue Mr. Kelley's pretrial voluntariness motion was denied in his criminal case and thus bars his self-incrimination claim here. Plaintiffs' claims are that Defendants Jordan, Reyes, and others "questioned [them] in a highly confrontation[al] manner, accused [them] of lying, told [them that they were] guilty, yelled at [them], struck him on the head, and made false promises that they would go easy on [them] and let [them] go if [they] made a statement[s]," all while Mr. Kelley and Lee's cognitive limitations were evident to them. This is sufficient for a coerced confession claim. Additionally, the Court finds that Plaintiffs' claims are not foreclosed by the original pretrial voluntariness hearing in Plaintiffs' underlying criminal cases. Plaintiffs' convictions were vacated and new trials ordered. "A judgment that has been vacated, reversed, or set aside" is "deprived of all conclusive effect, both as res judicata and as collateral estoppel." *Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 187 n.7 (3d Cir. 2006).

### E. **Whether Plaintiffs' State Law Claims are Barred by the New Jersey Tort Claims Act**

Defendants Jordan, Reid, Reyes, and Smith argue that they are not liable to Plaintiffs for negligence under the New Jersey Tort Claims Act ("NJTCA"). In doing so, they all cite the NJTCA's limitation on damages for public employees, N.J.S.A. 59:9-2(d), and Defendant Reid additionally cites the NJTCA's immunity for public employees, N.J.S.A. 59:3-2. While Defendants have generally cited the applicable Act, they notably exclude its key exception: neither NJTCA's immunity at N.J.S.A. 59:3-2 nor its limitation on damages at N.J.S.A. 59:9-2(d) extends to public employees whose conduct "constituted a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. 59:3-14. Accordingly, where a plaintiff's allegations "could encompass such conduct," his negligence claims should survive a motion to dismiss. *Endl v. New Jersey*, 5 F. Supp. 3d 689, 689–99 (D.N.J. 2014) (denying a motion to dismiss a negligence/malpractice claim where a plaintiff's allegations "could encompass" willful misconduct). Here, Plaintiffs' allegations encompass Defendants' willful misconduct and malice.

### IV.   CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are **GRANTED** as to Count VIII and in favor of Defendants Munsey and Amoresano. Count VIII and Defendants Munsey and Amoresano are **DISMISSED WITH PREJUDICE**. Defendants' motions are **DENIED** as to all other counts. An appropriate order follows.

Dated: July 1, 2020

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**