UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIC KELLEY,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD REYES, LORI HILLAS AS EXECUTOR OF THE ESTATE OF LOUIS STELL, ROBERT SMITH, ESTATE OF MICHAEL FINER, ALEX NIEVES, PETER IURATO, TIMOTHY JORDAN, RAYMOND REID, ALBERT CLARK, in their individual capacities, RICHARD MUNSEY and VINCENT AMORESANO, in their official capacities, and THE CITY OF PATERSON,<br><br>Defendants. | No. 2:19-cv-17911 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Defendant City of Paterson ("Paterson" or "the City") moves to bifurcate trial in this civil rights action on two bases: (1) individual defendants' liability from municipal liability; and (2) liability from damages. ECF No. 357 ("Motion"). The Court heard from the parties at a status conference on October 14, 2025 regarding bifurcation and directed briefing. ECF No. 349. Now, the Court decides these motions without further oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, the Motion is **DENIED** in full.

**I.   BACKGROUND**[1]

This is a civil rights case involving various constitutional, civil rights, and state-law claims. In short, Plaintiff contends that he was wrongfully incarcerated for 24 years for the robbery and murder of a store clerk, Tito Dante Merino, after DNA testing in 2014 proved that the distinctive green plaid baseball hat left at the crime scene was owned by someone else. Plaintiff alleges that he was physically attacked during his interrogation, which ultimately led to a confession that he contends was coerced and false. The vacatur of his conviction came without a finding of innocence by the state court.

In September 2019, Plaintiff filed suit against Paterson and various individual defendants, all of whom were members of the Paterson Police Department ("PPD") in 1993. After summary judgment, and the Court's decision on the parties' various motions to

---

[1] The Court assumes familiarity of the facts and procedural history of this case, which are more fully set forth in the Court's summary judgment opinion, ECF No. 266.

1

reconsider, ECF No. 332, the following claims survive: malicious prosecution, self-incrimination, civil rights conspiracy, supervisory liability, and various state-law counts against multiple individual officer defendants; and municipal liability under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978), and state-law negligence, gross negligence, negligent supervision and training, and civil rights counts against the City.

In the parties' initial draft pretrial order, Paterson indicated its intent to move to bifurcate trial of individual officers' liability from trial of the City's liability. ECF No. 326, at 73. Following a status conference on October 14, 2025, this Court requested briefing, both as to bifurcation of individual liability from municipal liability, as well as to bifurcation of liability from damages. ECF No. 349. On October 28, 2025, Paterson moved to "trifurcate" trial, requesting bifurcation as to liability of the individual defendants from trial of municipal liability, and then once the liability case is concluded, bifurcation of issues of liability from issues of damages. Mot. 1. In opposition, Plaintiff argued, *inter alia*, that there are no efficiency gains from bifurcation on either basis. ECF No. 369 ("Opposition").[2] No party replied. Trial is scheduled for March 2, 2026. ECF No. 350.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) governs bifurcation. Bifurcation "is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance," weighing "the various considerations of convenience, prejudice to parties, expedition, and economy of resources." *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978). Bifurcating trial of liability issues from damages issues "is the exception, not the rule." *Sweigart v. Voyager Trucking Corp.*, No. 23-2397, 2024 WL 3565306, at *3 (3d Cir. July 29, 2024), *cert. denied sub nom. Patten v. Sweigart*, 145 S. Ct. 1062 (2025). The Court abuses its discretion when its "decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Bayside Prison Litig.*, 157 F. App'x 545, 547 (3d Cir. 2005) (citation modified). The Third Circuit's "touchstone, in reviewing bifurcated proceedings, is whether the party bearing the burden of proof was unfairly prejudiced by the procedures employed." *United States Gypsum Co. v. Schiavo Bros., Inc.*, 668 F.2d 172, 181 (3d Cir. 1981). The moving party bears the burden to show the benefits to judicial economy outweigh any potential prejudice. *Princeton Biochemicals Inc. v. Beckman Instruments Inc.*, 180 F.R.D. 254, 256 (D.N.J. 1997), *dismissed*, 185 F.3d 878 (Fed. Cir. 1998).

The goal of Rule 42 is to provide the district court discretion to conduct its trials efficiently while protecting against prejudice to any party. *See* 9A Wright & Miller's Federal Practice & Procedure § 2381 (3d. ed. 1998) (describing the history and purpose of Rule 42). Indeed, bifurcation is proper when it promotes judicial economy. *See, e.g., Barr Lab'ys, Inc. v. Abbott Lab'ys*, 978 F.2d 98, 115 (3d Cir. 1992) (affirming a decision to bifurcate that could

---

[2] On November 17, 2025, Defendant Jordan filed a late brief opposing bifurcation of the liability case while supporting bifurcation of liability and damages. ECF No. 371 ("Jordan Brief"). Although the Court ordered that "[a]ny opposition shall be filed no later than November 12, 2025," ECF No. 350, the Court acknowledges Jordan's position.

2

narrow the scope of trial); *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 452 n.5 (3d Cir. 1997) (recognizing that "the interests of judicial economy and convenience counseled strongly in favor of severing the issues" where the first phase of trial was complex and involved dozens of witnesses over three weeks). On the other hand, bifurcation is improper when it would not improve efficiency. *See Thabault v. Chait*, 541 F.3d 512, 531 (3d Cir. 2008) (affirming denial of attempt to bifurcate and noting the district court's emphasis on judicial economy).

Additionally, Rule 42 aims to protect against prejudice or confusion. *See U.S. Gypsum Co. v. Schiavo Bros.*, 668 F.2d 172, 181 (3d Cir. 1981) ("Rule 42(b) permits bifurcation to 'avoid prejudice,' not to create it."). To prevent prejudice, the Third Circuit embraces the presumption that juries follow limiting instructions. *United States v. Urban*, 404 F.3d 754, 776 (3d Cir. 2005). The Third Circuit has approved of limiting instructions that ask the jury to "compartmentalize the evidence." *In re Bayside Prison Litig.*, 157 F. App'x 545, 548-49 (3d Cir. 2005) (holding that there was no abuse of discretion in declining to bifurcate individual and supervisory liability claims and approving of a limiting instruction requiring the jury to compartmentalize evidence). For example, in *Thabault*, the Third Circuit approved of a limiting instruction to cure possible prejudice. 541 F.3d at 531. Similarly, in *Branch*, the Third Circuit affirmed denial of a motion to bifurcate liability and damages, noting that "the distinctions between the permissible and impermissible purposes" of evidence admissible in both the liability and damages phases "are not so bewildering or unfairly prejudicial as to exceed the prophylactic power of a limiting instruction." *Branch v. Temple Univ.*, No. 21-3099, 2023 WL 3993016, at *3 (3d Cir. June 14, 2023).

### III. DISCUSSION

After careful review of the parties' briefs, and considering the Court's responsibility to balance the need for judicial efficiency against the risk of prejudice, the Court concludes that bifurcation on either ground is neither necessary nor helpful in this case. As explained below, bifurcation risks repetitive testimony and delay, while the efficiency gains from bifurcation are minimal, if any. Additionally, the Court's decision not to bifurcate does not prejudice Paterson or any individual defendant.

#### A. Bifurcation of Individual from Municipal Liability

Paterson argues that bifurcation of issues of liability as to the individual defendants from issues of municipal liability would promote judicial economy and avoid prejudice. Mot. 2. Paterson proposes that claims against the individual defendants proceed first, such that a jury verdict in favor of defendants would obviate the need for trial against the City. *Id.* 3; *see City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (acknowledging that *Monell* does not permit "the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm"). Paterson also raises concerns about "irreversible prejudice" that could result if the jury hears evidence relating to the City's *Monell* liability at the same time as when the jury hears evidence relating to individual defendants' liability. Mot. 5.

In response, Plaintiff concedes that bifurcation would be more efficient only if the jury

3

finds for the individual defendants. Opp. 2. Otherwise, Plaintiff notes that bifurcation could require multiple sets of attorney statements, jury instructions, and deliberations, which would be inherently more inefficient. *Id.* 2-3. Plaintiff also argues that there is significant overlapping evidence between individual liability and *Monell* liability, as the City's alleged failure to train and supervise its officers, if proven, would be probative as to both the individual officers' state of mind and the alleged conspiracy between the officers, as well as to the *Monell* claim. *Id.* 6-8. Similarly, Plaintiff argues that some of the individual defendants' testimony would be relevant to his *Monell* claim. *Id.* 10.

After weighing these competing arguments, the Court concludes that bifurcation would not make trial more efficient, and declining to bifurcate would not prejudice any defendant.

At the outset, several non-*Monell* counts, including state-law negligence, gross negligence, negligent supervision, and negligent training, survive against Paterson. *See* ECF No. 332, at 8-9 (permitting state-law claims to proceed against the City). An individual officer's liability is not a prerequisite for these claims. *See Forrest v. Parry*, 930 F.3d 93, 112 (3d Cir. 2019) (noting that a "state law negligent supervision claim was an independent claim, with distinct elements" and is "not limited to injuries arising from constitutional violations, and neither requires that the plaintiff's injuries result from a well-settled policy or custom nor a showing of deliberate indifference"). Plaintiff will have to introduce evidence in support of a "relatively straightforward negligence showing" against Paterson, *see id.*, which could include, among other things, evidence of the individual officers' conduct during the investigation as well as evidence of the PPD's pattern, practice, and customs. Because Plaintiff's theory seems to involve overlapping evidence and overlapping theories, bifurcation "would result in a needless duplication of the presentation of evidence, greatly taxing both the Court's and the litigants' resources." *Carter v. City of Phila.*, No. 97-cv-04499, 2000 WL 1368010, at *1 (E.D. Pa. Sept. 12, 2000).

Similarly, evidence supporting the PPD's alleged culture of impunity would overlap with evidence supporting the existence of a conspiracy among the individual defendants, including as to the individual defendants' state of mind. For example, the alleged lack of discipline would be relevant to claims against the individual defendants and assertions of a culture of impunity within the PPD. As Plaintiff explains, the individual defendants' alleged misconduct would itself be evidence of *Monell* liability. Opp. 8 (citing deposition testimony of individual defendants admitting to following the usual customs of the PPD). Likewise, the City's alleged failure to discipline officers for prior instances of misconduct would be evidence of, *inter alia*, supervisory liability because it would tend to prove the defendant officers' state of mind when committing the alleged misconduct. *See* 3d Cir. Model Civil Jury Instructions § 4.6.1 (including a direct instruction, actual knowledge, or deliberate indifference as an element of a supervisory liability claim). Here, these theories are intertwined, unlike other cases where there is a clean distinction between individual and municipal liability theories. *See White v. City of Vineland*, No. 16-cv-08308, 2021 WL 8565999, at *2 (D.N.J. July 15, 2021) (granting motion to bifurcate where there was "not significant overlap in the evidence").

Finally, Paterson has failed to meet its burden to show prejudice. Indeed, Defendant

Jordan, as the supposedly prejudiced party, opposes bifurcation on these grounds. Jordan Br. 1-2. Paterson cannot claim prejudice on behalf of other individual defendants who have the means and opportunity to assert their own rights. *See Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties"). Separately, Paterson argues that the City should "be afforded the opportunity" to argue that the individual officers' conduct was "outside the scope of their employment and authority as police officers for the City of Paterson." Mot. 6. Declining to bifurcate will not deprive the City of its opportunity to make its liability case at trial through opening statements, cross-examination, and its own case-in-chief.

For all these reasons, the motion to bifurcate trial as to the individual officers from trial as to municipal liability is **DENIED**.

### B. Bifurcation of Liability from Damages

Similarly, bifurcating issues of liability from issues of damages would not improve efficiency, nor would any defendant suffer prejudice from a single, combined trial.

First, any bifurcation would have to clearly separate liability and damages issues, as failure to do so could result in prejudice to the party seeking to introduce dual-purpose evidence. *See, e.g., U.S. Gypsum Co. v. Schiavo Bros., Inc.*, 668 F.2d 172, 181-82 (3d Cir. 1981) (remanding to the district court for failing to clearly separate issues of liability and damages); *Sweigart v. Voyager Trucking Corp.*, No. 23-2397, 2024 WL 3565306, at *4 (3d Cir. July 29, 2024), *cert. denied sub nom. Patten v. Sweigart*, 145 S. Ct. 1062 (2025) (holding that the district court did not abuse its discretion by rejecting an attempt to separate liability from damages, noting similarities between liability and damages evidence). *But see Idzojtic v. Pa. R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972) (affirming bifurcation of liability and damages notwithstanding the argument that "the issues of liability and damages could not logically be separated").

Here, given the challenges in clearly separating evidence of liability from evidence of damages, Paterson has failed to meet its burden to show that bifurcation would be more efficient. Paterson offers no clear method for segregating dual-purpose evidence. Although Paterson argues that bifurcation would "expedite and economize the trial," Mot. 7, Plaintiff notes that bifurcation would actually be more inefficient because the Court would have to delineate which evidence is admissible in which portion of the trial, consuming judicial resources. Opp. 12-13; *see Ford v. City of Pittsburgh*, No. 13-cv-01364, 2017 WL 3393954, at *3 (W.D. Pa. Aug. 4, 2017) ("Bifurcation would require the court and the parties to draw lines between what evidence is relative to damages verses what evidence is relative to liability."). Indeed, Plaintiff notes that he only has a "limited number of damages-only witnesses," including only one damages-only psychiatry expert, Opp. 13 & n.5, further underscoring the line-drawing challenges that bifurcation raises. Otherwise, Plaintiff's damages case will rely on testimony introduced to support his liability case, *id.*, which is not unusual. *See, e.g., Gillispie v. City of Miami Twp.*, No. 13-cv-00416, 2022 WL 16541259, at *3 (S.D. Ohio Oct. 28, 2022) (explaining different categories of overlapping evidence in a wrongful incarceration case); *Birch v. Town of New Milford*, No. 20-cv-01790, 2025 WL

289205, at *4 (D. Conn. Jan. 24, 2025) (discussing overlapping testimony). Plainly, requiring witnesses to testify twice would be inefficient.

Finally, although Paterson claims that "there is a potential for bias and prejudice" absent bifurcation because of "the effects that a 24-year prison incarceration has on [Plaintiff's] emotional distress and damages claim, Opp. 8, the Third Circuit is clear that a limiting instruction suffices to cure any possible prejudice. *See Sweigart v. Voyager Trucking Corp.*, No. 23-2397, 2024 WL 3565306, at *3 (3d Cir. July 29, 2024), *cert. denied sub nom. Patten v. Sweigart*, 145 S. Ct. 1062 (2025) (affirming where the district court declined to bifurcate liability and damages and "specifically instructed the jury to keep issues of damages and liability separate"); *Branch v. Temple Univ.*, No. 21-3099, 2023 WL 3993016, at *3 (3d Cir. June 14, 2023) (affirming denial of bifurcation request because a limiting instruction would prevent prejudice); *In re Bayside Prison Litig.*, 157 F. App'x 545, 548-49 (3d Cir. 2005) (same). Therefore, there is no risk of prejudice to Paterson or any individual defendant.

In sum, the Court **DENIES** Paterson's motion to bifurcate trial as to liability from trial as to damages.

## IV.   CONCLUSION

For the reasons set forth above, the motion to bifurcate is **DENIED**. An appropriate order follows.

Dated: December 4, 2025

WILLIAM J. MARTINI, U.S.D.J.