UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ERIC KELLEY,

    Plaintiff,

v.

RICHARD REYES, et al.,

    Defendants.

No. 2:19-cv-17911-WJM-JSA

OPINION

### WILLIAM J. MARTINI, U.S.D.J.:

Ahead of March 2, 2026 trial in this long-running wrongful conviction case, the parties bring five[1] motions in limine, ECF Nos. 312, 313, 314, 317, and 318. This Opinion addresses only Plaintiff Eric Kelley's ("Plaintiff" or "Mr. Kelley") Motion *in Limine* to Exclude Defendants' Expert Ronald Hampton ("Mr. Hampton"), ECF No. 314 ("Daubert Motion"), and Defendant City of Paterson's ("Paterson" or "City") Motion *in Limine* to Bar the Plaintiff from Referencing or Introducing into Evidence News Articles Served During the Course of Discovery at Trial, ECF No. 318 ("Newspaper Motion"). The Court issues this Opinion based on the papers without oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the Daubert Motion is **GRANTED IN PART** and **DENIED IN PART**, the Newspaper Motion is **DENIED IN PART**, and the Court **RESERVES** judgment on all remaining arguments and motions in limine.

I.    **BACKGROUND**

The Court assumes familiarity with the facts of this matter, as discussed in the Court's summary judgment Opinion, ECF No. 266 ("SJ Opinion"), and only discusses the relevant facts. In short, Plaintiff contends that he was wrongfully incarcerated for a 1993 murder and robbery for 24 years until DNA testing provided a basis for the trial court to vacate his convictions, and the State declined to retry him. Plaintiff then sued several members of the Paterson Police Department ("PPD") who allegedly violated his constitutional rights and the City of Paterson ("Paterson"). Plaintiff alleges causes of action under 42 U.S.C. § 1983, *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and state law.

---

[1] Paterson "no longer seeks" to exclude Plaintiff's expert, Dr. Katherine A. Porterfield. ECF No. 385.

1

To testify at trial, Paterson retained Ronald Hampton, a twenty-five-year veteran of the New Jersey State Police, as an expert witness on the policies and procedures of the PPD during the relevant time. ECF No. 314-3 ("Opening Report"); ECF No. 314-2 ("Rebuttal Report"). In preparing both reports, Mr. Hampton reviewed litigation documents in this case, as well as the PPD's policies and procedures. *Id.* 87-89; Opening Report 5.

Additionally, to substantiate his *Monell* claim, Plaintiff submitted various newspaper articles from the period surrounding Plaintiff's interrogation, arrest, and trial, which the Court considered. *See* SJ Op. 23-26 (denying summary judgment based partially on these newspaper articles). The Court declined to reconsider the SJ Opinion. ECF No. 332.

## II.   LEGAL STANDARD

Trial courts have "wide latitude" to control the admission of evidence before trial. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1998). However, trial courts "should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017) (citing *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013)). Instead of ruling on a motion in limine in advance of trial, the court can "reserve judgment until trial in order to place the motion in the appropriate factual context." *Id.*

## III.   DEFENDANTS' EXPERT

First, Plaintiff moves to exclude the testimony of Defendant's expert, Ronald Hampton. Daubert Mot. 2. The parties dispute Mr. Hampton's qualifications to rebut Plaintiff's social psychology expert, the reliability of Mr. Hampton's methodology, and the fit between his proffered testimony and the issues in this case.

### A.   Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony, providing:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The proponent of expert testimony must demonstrate its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993). The proponent must meet "three major requirements: (1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring scientific,

technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). Rule 702 "has a liberal policy of admissibility," *see Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997), with "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" assuming the "traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### B. Discussion

As discussed below, the Court **excludes** Mr. Hampton's rebuttal testimony in full and **excludes** Mr. Hampton's opening testimony in part. Mr. Hampton's proffered rebuttal testimony fails *Daubert*'s fit prong, and he lacks social psychology qualifications to rebut Plaintiff's expert. As to the proffered testimony in his Opening Report, Mr. Hampton may only opine based on his training and experience regarding how Paterson's police practices compared to other departments at the relevant time and how those practices evolved. Finally, the Court finds that a *Daubert* hearing is unnecessary because the Court's ruling does not examine factual issues. *See Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999) (holding that "[a]n in limine hearing will obviously not be required whenever a *Daubert* objection is raised to a proffer of expert evidence," particularly where the ruling does not concern factual issues).

#### 1. Rebuttal Report

Mr. Hampton's entire proposed rebuttal testimony is inadmissible under *Daubert*'s fit prong, and Mr. Hampton is unqualified to rebut the social psychology testimony of Plaintiff's expert.

As to fit, the Court examines "the proffered connection between the scientific research or test result to be presented, and particular disputed factual issues in the case." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000). When testifying, "an expert witness is prohibited from rendering a legal opinion." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006).

Here, the Rebuttal Report intrudes on the province of the jury by making credibility determinations, opining on legal issues, and regurgitating fact witness testimony. First, Mr. Hampton inappropriately comments on witnesses' knowledge or understanding. *Contrast* Rebuttal Report 44, 63-65 (opining, for example, that Mr. Kelley "was certainly knowledgeable of police tactics" and that the officers "had no knowledge" of Mr. Kelley's physical and mental conditions), *with M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 129 (3d Cir. 2020) ("[A]n expert cannot testify to the legal conclusion of whether appropriate people had actual knowledge."). Second, Mr. Hampton improperly opines about legal requirements. *Contrast* Rebuttal Report 55 ("[I]t is clear Miranda warnings were provided, as required by law."), *with Berckeley Inv. Grp.*, 455 F.3d at 218 (holding that an expert "cannot testify as to whether [the defendant] complied with legal duties"), *and Toscano v. Case*, No. 11-cv-04121, 2013 WL 5333206, at *9 (D.N.J. Sept. 20, 2013) (excluding legal conclusions, such as the existence of probable cause, the need

3

for *Miranda* warnings, and whether the police were deliberately indifferent as to the plaintiff's rights). Lastly, Mr. Hampton unacceptably weighs conflicting evidence and witnesses' credibility. *Contrast* Rebuttal Report 42 (whether Mr. Kelley offered "conflicting accounts" of the alleged confession), *and id.* 61, 69-70 (discussing Mr. Kelley's "account and truthfulness" and asserting that a witness's "recollection of what occurred in 1993 is certainly questionable"), *with United States v. Ward*, 169 F.2d 460, 462 (3d Cir. 1948) ("[I]t is nevertheless axiomatic that the 'expert' may not go far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility.").

Additionally, Mr. Hampton threatens to waste trial time by regurgitating deposition testimony with minimal to no analysis. Rebuttal Report 8-12, 19-42, 45-54, 56-59, 64, 68-75; *see S.Y. v. Roman Cath. Diocese of Paterson*, No. 20-cv-02605, 2024 WL 1231333, at *6 (D.N.J. Mar. 21, 2024) (excluding portions of an expert report that "merely provide a narrative of Plaintiff's deposition testimony" because "the trier of fact can review the evidence in the record themselves" (citation modified)). Mr. Hampton's summaries of witness testimony "are matters that would be within the common understanding of regular citizens and do not require—and are not benefited by—the opinions of a police practices expert." *Toscano*, 2013 WL 5333206, at *9 (citation modified).

Finally, Mr. Hampton is not a social psychologist, ECF No. 341 ("Daubert Opposition"), at 7, yet he discusses psychological concepts such as tunnel vision, contamination, and psychological factors relating to Mr. Kelley's confession. Rebuttal Report 63-66, 71. Lacking "skill or knowledge greater than the average layman" on these topics, Mr. Hampton is unqualified to rebut Plaintiff's expert. *See Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 114 (3d Cir. 1987).

In sum, the Court **excludes** Mr. Hampton's entire proffered rebuttal testimony. Furthermore, the Court **excludes** Mr. Hampton's Rebuttal Report for invading the jury's province, *see* Daubert Mot. 21-22 (bringing a Rule 403 challenge to the Rebuttal Report), and for offering new opinions improperly raised on rebuttal. *See* Daubert Mot. 23-24.

          2.     Opening Report

In contrast, Mr. Hampton's Opening Report generally marches through the background of the PPD's policies and procedures in effect in 1993, how those policies compared to those in place at other law enforcement agencies, and how those policies evolved. Such testimony would aid the jury's examination of the *Monell* claims against Paterson. *See Jefferson v. Lias*, No. 15-cv-01086, 2022 WL 4550144, at *9 (D.N.J. Sept. 28, 2022) (finding that a police practices expert's testimony could assist "in determining whether the [police] practices differed from standard law enforcement practices" when evaluating a *Monell* claim, provided the expert did not "express an opinion on the ultimate issues in the case"). On this basis, Plaintiff concedes Mr. Hampton's is qualified. ECF No. 392, at 28.

Remaining is Plaintiff's argument that Mr. Hampton's methodology is unreliable and based solely on *ipse dixit*. Daubert Mot. 16. Paterson contends that Mr. Hampton "merely reviews facts that are in the record to formulate his expert opinion" and analyzes them

based on his decades-long career in state law enforcement. Daubert Opp'n 3-4. As discussed below, after excluding several irrelevant, inappropriate, and speculative lines of testimony, the Court concludes that Plaintiff's objections to Mr. Hampton's methodology relate more to weight rather than reliability.

When determining whether expert testimony is reliable, courts may consider (1) whether a theory or technique "can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error"; and (4) whether there is "general acceptance" of the methodology in the relevant scientific community. *Daubert*, 509 U.S. at 593-94. Importantly, these *Daubert* factors "are neither exhaustive nor applicable in every case." *Pineda*, 520 F.3d at 248 (citation modified). The *Daubert* factors apply "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting Fed. R. Evid. 702). Admissibility depends on "whether the particular opinion is based on valid reasoning and reliable methodology," not whether the "opinion has the best foundation or whether it is demonstrably correct." *Oddi*, 234 F.3d at 145-46 (citation modified).

Here, Mr. Hampton's proffered testimony is not purely *ipse dixit*, or "[s]omething asserted but not proved." *Ipse dixit, Black's Law Dictionary* (12th ed 2024). Mr. Hampton makes several assertions about the PPD's policies and procedures, which he attempts to prove based on his own extensive training and experience. *See, e.g.*, Opening Report 8, 10-13, 15-17, 20, 22-25 (analyzing the PPD's policies and procedures in light of his experience and training). Mr. Hampton's "application of extensive experience to analyze" the PPD's policies and procedures is a reliable methodology based on his 25 years with the New Jersey State Police. Fed. R. Evid. 702 advisory committee note to 2000 amendment; Opening Report 4, 26-37; *see Pineda*, 520 F.3d at 247-48 (enumerating several factors that courts must consider, the only relevant one being "the qualifications of the expert witness testifying based on the methodology").

Indeed, police experts regularly testify about non-scientific topics based on their own training and experience. *See, e.g., United States v. Davis*, 397 F.3d 173, 179 (3d Cir. 2005) (permitting an officer with narcotics experience to testify as an expert as to drug trafficking operations "because it is not within the common knowledge of the average juror"); *Toscano*, 2013 WL 5333206, at *9 (D.N.J. Sept. 20, 2013) (finding portions of a police practices expert's reliable because "not every subject on which an expert might properly opine necessarily admits of a specific methodology"). Plaintiff's main argument that Mr. Hampton credited Defendants' side of the case and failed to address Plaintiff's evidence, Daubert Mot. 16, is true for the Rebuttal Report, not the bulk of the Opening Report, where Mr. Hampton largely does not examine PPD's conduct in this case.

Nevertheless, the Court **excludes** several lines of testimony within the Opening Report. First, Mr. Hampton may not testify about irrelevant matters, such as, *inter alia*, the rules governing officer appearance. Opening Report 11-13, 15; *see* Daubert Mot. 15 n.3. Second, Mr. Hampton may not reference the testimony of fact witnesses in this case, as he

does with Lieutenant Spagnola and Chief Munsey. Opening Report 9, 17-22. Third, Mr. Hampton may not speculate. *Contrast id.* 16-17 (opining with insufficient support that "it is possible" that the PPD modeled New Jersey State Police instructions), *with Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996) (affirming exclusion of testimony that "is based on pure speculation, rather than a reasonable inference"). Finally, Mr. Hampton may not utilize materials prepared after 1993 to support opinions regarding policies or procedures in place in 1993. Opening Report 16-17, 20 (possibly relying on a document produced after the murder investigation).

In conclusion, the Court **GRANTS IN PART** the Daubert Motion as to Mr. Hampton's entire rebuttal testimony and aspects of his opening testimony that are irrelevant, speculative, relate to witnesses in this case, or support opinions about policies in effect in 1993 based on materials created years later. The Court **DENIES IN PART** the Daubert Motion as to opinions relating to the consistency of the PPD's rules and regulations with those employed by other New Jersey police departments, police standards applicable in 1993, and how those practices and standards evolved over time.

## IV. NEWSPAPER ARTICLES

Next, Paterson, joined by Defendants Albert Clark and Raymond Reid, moves to bar Plaintiff from referring to newspaper articles regarding several instances of police misconduct at the PPD, arguing that they constitute inadmissible hearsay. ECF No. 318 ("News Motion"), at 1-4; ECF No. 327, at 1; ECF No. 343, at 1. In opposition, Mr. Kelley argues that many newspaper articles are admissible as ancient documents. ECF No. 337 ("News Opposition"), at 5-6. The parties also dispute the authenticity of the articles. ECF No. 389, at 30; News Mot. 12 n.4.

The ancient documents exception to the hearsay rule applies to statements within properly authenticated documents prepared before January 1, 1998. Fed. R. Evid. 803(16). As the proffered newspaper articles were published on or before January 1, 1998, they are all ancient documents. *See* ECF No. 337-5 (exhibit with the most recent publication date of April 20, 1994). Defendants do not argue to the contrary. The Court therefore **denies** the News Motion on this basis.

As to authentication, so-called ancient documents can be authenticated by a showing that the document (1) "is in a condition that creates no suspicion about its authenticity," (2) is located "in a place where, if authentic, it would likely be," and (3) is at least 20 years old. Fed. R. Evid. 901(b)(8). In general, newspaper articles are self-authenticating and require no further showing by Plaintiff. Fed. R. Evid. 902(6). For ancient documents found electronically, "the importance of custody or place where found increases" compared to the appearance of the document. Fed. R. Evid. 901 Advisory Committee Notes ex. 8.

Here, the proffered newspaper articles are self-authenticating. *See, e.g., White v. City of Birmingham*, 96 F. Supp. 3d 1260, 1274 (N.D. Ala. 2015), *as amended* (May 27, 2015) (admitting as self-authenticating news articles found electronically as "analogous to traditional newspaper articles"); *Young v. Pleasant Valley Sch. Dist.*, No. 07-cv-00854,

6

2011 WL 3651796, at *1 (M.D. Pa. Aug. 18, 2011) (noting that a stipulation of authenticity as to newspaper articles published online is "likely unnecessary" because "newspapers and periodicals are self-authenticating documents"). The Court finds no reason to treat these articles differently.

Even if not self-authenticating, Plaintiff made the proper showing to authenticate the articles under Rule 901(b)(8). *See* News Opp'n 12 n.4. The website on which Plaintiff relies, www.newspapers.com, professes to have millions of pages of newspaper articles from newspapers in New Jersey. *New Jersey Newspapers*, Newspapers.com, https://www.newspapers.com/location/us/new-jersey/ (https://perma.cc/P5B3-MSLC) (last visited December 16, 2025). Currently, there is no contention that www.newspapers.com is an unreliable repository of newspaper articles, including the articles attached to Plaintiff's letter, ECF No. 337, all of which are at least 20 years old. *See, e.g., Express Homebuyers USA, LLC v. WBH Mktg. Inc.*, 323 F. Supp. 3d 784, 788 & n.3 (E.D. Va. 2018) (permitting authentication of a search on www.newspapers.com). Accordingly, under Rule 901(b)(8), Plaintiff has properly authenticated the articles.

In sum, the News Motion is **DENIED IN PART** as to Defendant's hearsay and authentication challenges. The Court **RESERVES** on (1) issues involving hearsay within the articles and (2) Defendants' Rule 403 argument.

## V.   CONCLUSION

In conclusion, the Court **GRANTS IN PART** the Daubert Motion as to Mr. Hampton's entire rebuttal testimony and portions of his opening testimony that speculate, discuss fact witness testimony in this case, are irrelevant, or rely on materials that post-date this case to support standards in effect in 1993; **DENIES IN PART** the Daubert Motion as to testimony based in training and experience that analyzes the PPD's practices in 1993, the consistency of the PPD's practices with other departments' practices, and how police practices and standards evolved over time; **DENIES IN PART** the Newspaper Motion as to Defendants' hearsay and authentication arguments; and **RESERVES** judgment on all remaining arguments and in limine motions. An appropriate order follows.

DATE: January 14, 2026

WILLIAM J. MARTINI, U.S.D.J.