**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

---

ERIC KELLEY,

       Plaintiff,

    v.

RICHARD REYES, et al,

       Defendants.

No. 2:19-cv-17911 (WJM)

**OPINION**

---

Before the Court is Defendant City of Paterson's ("Paterson" or "City") Rule 50(a) motion for a judgment as a matter of law as to Plaintiff Eric Kelley's claims of 42 U.S.C. § 1983 municipal liability and state law negligence and negligent supervision against the City. Previously, the Court denied summary judgment as to Plaintiff's claims against Paterson, referring in part to evidence that ultimately was not presented at trial. ECF No. 266, at 23-27. After hearing argument from the parties, and after reviewing Plaintiff's briefs, ECF No. 458 ("Monell Opposition"); ECF No. 465 ("Negligence Opposition"), for the reasons set forth below and stated on the record, Trial Tr. 2372:15-2375:13; 2378:10-15; 2380:7-2381:6; 2389:11-17; ECF No. 484, the Court **GRANTS** the City's Motion.

## I.   BACKGROUND

The evidence presented in support of Plaintiff's *Monell* claim consists primarily of four isolated incidents over three years occurring in an inner-city police department of approximately 400 officers. Trial Tr. 1921:6-8; Monell Opp'n 6-7, 9-11. These incidents involve excessive force, defrauding a fellow police officer, and off-duty conduct—nothing similar to Plaintiff's claims of fabricated evidence, deliberate deception, or coerced confessions. These incidents were known to the PPD, and as described further below, the officers involved largely faced discipline for misconduct that could be substantiated. *See id.* 1825:23-1826:20; 1941:8-1942:4. The Court summarizes these incidents briefly below, viewing them in the light most favorable to the Plaintiff.

- *May 1991: Michael Fostok.* Michael Fostok (formerly Bakri Fostok) testified about an incident in PPD headquarters where, following a verbal exchange with an officer, he was handcuffed and then subsequently assaulted by an officer while in booking. Trial Tr. 1349:8-18; 1350:4-10; 1352:1-18. Although Mr. Fostok initially faced an assault charge, the charges against him were dropped, and he filed an Internal Affairs complaint and a civil lawsuit. *Id.* 1354:21-1356:11.

1

- *February 1992: Off-duty Fraud.* PPD Officer Cynthia Smith was indicted on a charge of theft by deception for defrauding a fellow officer. Pl. Ex. 86. The outcome of her proceeding was not introduced into evidence.

- *May 1992: Kenneth Taylor.* Kenneth Taylor testified that he was involved in a confrontation with PPD Officer Steven Smith at a bar in Wayne, New Jersey, resulting in Mr. Taylor's arrest by Wayne Police. *Id.* 1286:22-1290:7-10. The charges against Mr. Taylor were eventually dismissed, and Officer Smith ultimately was convicted of aggravated assault, false swearing, and filing false police reports, after which he "agreed to resign" from the PPD. *Id.* 1291:22-1296:16; 1963:20-1964:3; Pl. Ex. 96; Pl. Ex. 194.

- *July 1993: Merino Homicide.* Chief Munsey testified that his subordinates "kept [him] abreast" of updates in the Merino investigation and believed that he was told "as soon as possible once the confessions were obtained." *Id.* 1980:5-11. When asked whether he "think[s] it would be possible in this case for sergeants and detectives working under [his] command to beat suspects and fabricate confessions without [him] knowing about it," Chief Munsey stated, "I don't believe that." *Id.* 1986:20-1987:4. Additionally, Chief Munsey was "familiar with" then-suspect David Hancock's stepfather, who had political influence in Paterson, telling officers when Mr. Hancock was brought in for questioning that they "better be right on this because you know who his father is. So don't pull no funny games." *Id.* 631:20-24; 1982:15-17; 1983:16-18. Hancock then faced charges for his involvement in the homicide. *Id.* 636:3-19.

- *December 1993: Kenneth Eatman.* Kenneth Eatman testified that he was waiting to pay a ticket at the Paterson municipal building while listening to music on a Walkman when a police officer approached him and instructed him to remove his headphones. *Id.* 1180:11-18, 1181:2-10. An argument ensued, leading to officers assaulting and handcuffing him. *Id.* 1180:11-1183:21. Mr. Eatman testified that both the charges against him and the charges against the officers were dropped, and Mr. Eatman filed an Internal Affairs report. *Id.* 1186:13-22. Two patrolmen were arraigned on charges of aggravated assault and filing a false police report, though PPD Internal Affairs Sergeant Ronald Barnes told the newspaper that no witness corroborated Mr. Eatman's account. Pl. Ex. 83.

- *Throughout the 1990s: Federal Investigation.* Former AUSA Henry Klingeman testified about the federal investigation during the 1990s into allegations that officers in the PPD's task force charged with policing street activity also abused citizens without justification. *Id.* 1467:7-23. Mr. Klingeman explained that the investigation produced multiple grand jury subpoenas but only one excessive force prosecution against Officer Stanley Smith in 1998. *Id.* 1468:18-23; 1469:17-21; 1471:13-1472:17; 1473:12-24.

2

## II.    LEGAL STANDARD

A court may grant judgment as a matter of law under Rule 50(a) only when it finds that a "reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue." Fed. R. Civ. P. 50(a)(1). Judgment as a matter of law should be granted "sparingly," and, in determining whether there exists a sufficient evidentiary basis to sustain liability, the court "may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Ocasio v. Cnty. of Hudson*, No. 23-1336, 2024 WL 2843018, at *1 (3d Cir. June 5, 2024) (citation modified). A motion under Rule 50(a) "should be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citation modified). The standard under Rule 50 "largely mirrors the summary-judgment standard, the difference being that district courts evaluate Rule 50(a) motions in light of the trial record rather than the discovery record." *Dupree v. Younger*, 598 U.S. 729, 731-32 (2023) (citation modified). The Court "draws all *reasonable and logical* inferences in the nonmovant's favor." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (emphasis added).

## III.    DISCUSSION

Plaintiff has two *Monell* theories: (A) Paterson has an official policy or custom of overlooking police misconduct, fostering a culture of impunity that caused his constitutional rights to be violated; and (B) Paterson's failure to adequately supervise and discipline its employees constitutes deliberate indifference, causing Plaintiff's constitutional rights to be violated. ECF No. 402 ("Plaintiff Trial Brief"), at 16-19; Monell Opp'n 5. These theories are distinct: "A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, *or* that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citation modified) (emphasis added). Under both theories, the Supreme Court has cautioned that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978).

### A.    Official Policy or Custom

Under his official policy or custom theory, Plaintiff must prove either (1) there was an official custom so widespread and well-settled that it constitutes a standard operating procedure of the PPD <u>or</u> (2) Chief Munsey, the official policymaker of the City of Paterson,[1] directed, approved, or endorsed the constitutional misconduct. Pl. Trial Br. 18-19; *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403-04 (1997)

---

[1] The relevant policymaker under New Jersey law in *Monell* cases involving alleged police misconduct is the police chief. *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 913 (3d Cir. 2003).

(explaining the standard). As explained below, he failed to produce sufficient evidence at trial to sustain a jury finding of liability under both approaches.

### 1.    Custom

Under *Monell*, a custom exists when "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citation modified). Custom "may also be established by evidence of knowledge and acquiescence." *Beck*, 89 F.3d at 971.

The evidence of the alleged culture of impunity at the PPD, when viewed in a light most favorable to Plaintiff, was not so widespread and well-settled that a jury could find that it constituted a standard operating procedure of the PPD at the time of the Merino murder. At the time, Chief Munsey had 400 officers under his command, so the handful of instances of misconduct over a few years surrounding the Merino homicide cannot as a matter of law rise to the level of a permanent custom of impunity meriting § 1983 liability. Indeed, federal investigators conducted a broad probe, culminating in charges against only one officer for excessive force. In all but Mr. Fostok's incident (as well as this case), officers faced disciplinary or criminal charges,[2] though in Mr. Eatman's case, the charges were dropped against the offending officer. Other than speculation, there is no evidence that the charges were dropped for corrupt reasons. Based on these incidents, a reasonable jury could not conclude that there was a culture of impunity at the PPD.

Even crediting Mr. Eatman and Mr. Fostok's testimony, two incidents involving excessive force over three years do not create a custom of condoning constitutional misconduct. Although Mr. Fostok testified that no one from Internal Affairs spoke with him, that alone is insufficient to support a custom theory. *See Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) (describing the need for a "pattern" of behavior to substantiate a custom theory). Moreover, Mr. Eatman's incident occurred *after* Mr. Kelley's confession, so it could not support the existence of a custom existing at the relevant time. Additionally, the incidents involving Mr. Eatman and Mr. Fostok do not involve fabrication, deliberate deception, and coerced confessions, nor do they involve interrogations or false arrests. *See Beck*, 89 F.3d at 974-75 (concluding that there was sufficient evidence to support knowledge and acquiescence where the evidence included multiple complaints of the same type against the same officer within a year); *Beers v. Cnty. of Northumberland*, No. 23-2555, 2024 WL 2874283, at *3 (3d Cir. June 7, 2024) (affirming dismissal of a complaint that failed to allege a custom of understaffing county jails—the exact type of relevant misconduct).

---

[2] The off-duty incident involving Officer Steven Smith in Wayne is immaterial as a matter of law because the decisions of Wayne officers' charging decisions say nothing about the PPD, particularly where Chief Munsey communicated with the Wayne Police about the investigation, and the officer ultimately was convicted. Trial Tr. 1952:21-1953:25.

The remainder of the evidence includes tangential comments in support of police officers accused of misconduct, which cannot as a matter of law constitute a widespread, standard operating procedure in the PPD to condone official misconduct. *See* Pl. Ex. 86, 101. There is no evidence to support even a reasonable inference that Chief Munsey obstructed or otherwise interfered with the criminal investigations into Officers Cynthia Smith, Stanley Smith, or Steven Smith. Plaintiff's assertion that Individual Defendants' positions at trial somehow demonstrate a culture of impunity is speculative, conclusory, and inconsistent with the actual evidence. *See* Opp'n 8. Rhetoric aside, Plaintiff's argument that during this trial, the Individual Defendants "[we]re lying on the stand to protect themselves and each other" is irrelevant to a claim of a culture of impunity more than thirty years ago. *See id.* Viewing the evidence in the light most favorable to Plaintiff, these incidents cannot as a matter of law demonstrate a culture of unaccountability supporting a custom so well-settled and permanent that it constitutes law.

### 2. Policy

As to policy, Plaintiff "must point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy *on the relevant subject.*" *Forrest*, 930 F.3d at 105 (emphasis added). He did not do so at trial. Although Chief Munsey had discretion to suspend officers facing indictment, "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986). Similarly, for the reasons discussed above, the evidence presented by Plaintiff does not show an overarching policy of condoning false or coerced confessions—indeed, the undisputed evidence is to the contrary. *See generally, e.g.*, Pl. Ex. 2A (PPD Manual prohibiting such conduct). Therefore, Plaintiff failed to introduce sufficient evidence upon which a reasonable jury could find that Chief Munsey established an official unconstitutional policy based on the incidents described.

What remains is Plaintiff's theory that Munsey's conduct in the Merino investigation suffices to impose *Monell* liability based on a theory of ratification. Opp'n. 5, 11-12. Ratification involves the "[c]onfirmation and acceptance of a previous act," or "[t]he affirmance of someone's prior act." *Ratification*, Black's Law Dictionary (12th ed. 2024). As an agency principle, ratification requires either a manifestation of assent or "conduct that justifies a reasonable assumption that the person so consents." Restatement (3d) of Agency § 4.01(2) (2006); *see Valentin v. Phila. Gas Works*, 128 F. App'x 284, 285-86 (3d Cir. 2005) (describing how liability can attach to the city based on "the affirmative conduct of a person who has been identified as the ultimate policymaker"). Certainly, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. at 4809.

Here, Plaintiff's ratification theory hangs on Chief Munsey's testimony that he was "kept abreast" of the Merino investigation and believed that it would not "be possible in this case for sergeants and detectives working under [his] command to beat suspects and

fabricate confessions without [him] knowing about it." This speculative answer to a hypothetical question at trial, decades later, about what he believes he might have known about misconduct that might have occurred does not fit the "extreme factual situation[]" contemplated for imposing municipal liability. *See Davidson v. City of Stafford*, 848 F.3d 384, 395-96 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (holding that the police chief's after-the-fact review of the officers' conduct did not amount to ratification). Chief Munsey never even testified that he saw the confessions or any of the other relevant case documents. For Plaintiff's ratification theory to work, he must introduce evidence that Chief Munsey actually or constructively knew of the misconduct, not that he hypothetically would have known about it if it did in fact occur. *See Allen v. Hays*, 65 F.4th 736, 749 & n.10 (5th Cir. 2023) (reasoning that *Monell* liability requires actual or constructive knowledge by the official policymaker). Therefore, as to the Merino investigation (and all incidents referenced by Plaintiff), there is no evidence supporting a reasonable assumption that Chief Munsey confirmed or accepted any misconduct, making ratification impossible.

Moreover, Chief Munsey's alleged comment that the officers had better be correct that Mr. Hancock was a suspect has nothing to do with the alleged misconduct in this case involving Mr. Kelley's confession. If anything, the jury could reasonably conclude that Chief Munsey's comment was consistent with an instruction to be careful, and even with that warning, the officers *prosecuted* Mr. Hancock for his alleged role in the Merino homicide. Based on the record, no reasonable jury could credit Plaintiff's theory that Chief Munsey was showing favoritism based on Mr. Hancock's political connections when Mr. Hancock ultimately faced prosecution.

Therefore, the City has shown that the evidence introduced at trial is insufficient for a jury to find liability on both his custom and policy theories.

## B.    Failure to Supervise or Discipline

Plaintiff also claims liability against the City for failing to supervise and/or discipline PPD officers. That theory requires Plaintiff to prove (1) inadequate supervision or discipline; (2) deliberate indifference to the inadequacy; and (3) proximate cause. *See Forrest v. Parry*, 930 F.3d 93, 105-06 (3d Cir. 2019). As to the deliberate indifference element, Plaintiff must prove (a) the City knew the officers would confront a particular situation; (b) which involved a difficult choice or a choice officers had a history of mishandling; and (c) the wrong choice would frequently cause a deprivation of constitutional rights. *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999). "The scope of failure to train liability is a narrow one." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d. Cir. 2001). A failure to supervise, discipline, or train requires "evidence that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference." *Id.* at 216.

Here, Plaintiff argues that Internal Affairs had a history of not following up on complaints of misconduct, (*e.g.*, the Eatman, Taylor, and Fostok incidents) and that Internal Affairs failed to take corrective action, frequently depriving citizens of their constitutional

6

rights and amounting to deliberate indifference. None of these incidents in the record demonstrate deliberate indifference based on a pattern of fabrication, deliberate deception, or coercion charges. *See Connick v. Thompson*, 563 U.S. 51, 62-63 (2011) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." (citation modified)); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985) (rejecting municipal liability under a deliberate indifference theory "simply because the municipality hired one 'bad apple'"). Although Plaintiff argued at trial that the officers in each of these incidents fabricated charges to cover up misconduct, in several incidents, the officers faced disciplinary charges themselves, belying a speculative inference that the City condoned the alleged misconduct.

Moreover, as to the failure or inadequacy theory, single-incident liability is frowned upon, whether based on the Merino investigation or any individual incident. *See Hightower v. City of Phila.*, 130 F.4th 352, 357 (3d Cir. 2025) (cautioning against premising municipal liability involving an inadequacy theory based on a single incident, noting that the Supreme Court has only entertained a single-incident theory as a hypothetical); *see McGuire v. City of Pittsburgh*, No. 14-cv-01531, 2016 WL 6561457, at *8-9 (W.D. Pa. Nov. 3, 2016) (granting summary judgment to the city on a failure-to-train claim where the plaintiff failed to introduce evidence supporting other similar instances). Furthermore, the record lacks any allegations of misconduct so extreme and obvious, such as a city failing to train armed officers before "set[ting] them loose without any legal training," that would merit single-incident liability. *See Hightower*, 130 F.4th at 357.

Viewed in the light most favorable to Plaintiff, the record shows that in each incident, the PPD's Internal Affairs Department investigated, leading to charges in most of the incidents. Based on this record, the City has shown that a reasonable jury could not find *Monell* liability on a theory of inadequate supervision of training of PPD officers.

## C. **Negligence**

Finally, the Court **grants** the City's motion for judgment as a matter of law as to Plaintiff's negligence-based theories because Plaintiff failed to adduce evidence of economic damages as required under the New Jersey Tort Claims Act, N.J. Rev. Stat. § 59:1-1 (2025) *et seq.* ("NJTCA").

Although *respondeat superior* can provide a basis for municipal liability for negligence-based torts, pain and suffering damages "against a public entity or public employee for pain and suffering resulting from any injury" are permitted only where there is evidence of "permanent loss of a bodily function, permanent disfigurement, or dismemberment where the medical treatment expenses are in excess of $3,600.00." N.J.S.A. 59:9-2(d) (the "verbal threshold"); *Lankford v. City of Clifton Police Dep't*, 546 F. Supp. 3d 296, 322 (D.N.J. 2021); *Casciano v. City of Paterson*, No. 19-cv-09475, 2022 WL 170857, at *8 (D.N.J. Jan. 19, 2022) (recognizing that "Plaintiff cannot maintain a claim for pain and suffering damages" under her state law negligence claims); *see Nieves v. Adolf*, 241 N.J. 567, 581-82 (2020) (applying the NJTCA to claims for pain and suffering

based on twelve years of wrongful incarceration). It is undisputed that Plaintiff's damages are for pain and suffering. *See* Negligence Opp'n 1 (referring to "Plaintiff's requested relief of pain and suffering damages"). Plaintiff offered no evidence that he suffered a permanent, substantial loss of bodily function or permanent disfigurement or dismemberment resulting in greater than $3,600 in medical expenses. *See Faragalla v. Jersey City*, No. 17-cv-03604, 2020 WL 5812798, at *14 (D.N.J. Sept. 30, 2020); *Baker v. United States*, 642 F. App'x 147, 150 (3d Cir. 2016) (holding that the NJTCA bars a claim for negligent supervision of law enforcement against a city); *Hansell v. City of Atl. City*, 152 F. Supp. 2d 589, 611 (D.N.J. 2001), *aff'd,* 46 F. App'x 665 (3d Cir. 2002) (holding that the NJTCA bars a claim for negligence absent a showing of "permanent loss of bodily function").

Plaintiff's arguments in support of reconsideration are unavailing. First, Plaintiff is incorrect that the City waived its affirmative defense. ECF No. 90 ("Paterson Answer"), at 19, 25 (Eighteenth Separate Defense; Fifty-Fourth Separate Defense). Second, Plaintiff's case law is inapposite, relating either to liability for intentional torts or where the statute does not apply. *See Hayward v. Salem City Bd. of Educ.*, No. 14-cv-05200, 2016 WL 4744132, at *8, 11, 13 (D.N.J. Sept. 12, 2016) (concluding that the verbal threshold applied but there was a genuine issue of material fact as to actual malice or willful misconduct in surviving state-law tort counts); *Brewer v. Hayman*, No. 06-cv-06294, 2009 WL 2139429, at *11 (D.N.J. July 10, 2009) (applying the NJTCA to non-negligence counts); *Alston v. City of Camden*, 168 N.J. 170, 176 (2001) (noting the rule is "immunity for public entities with liability as the exception"); *Tice v. Cramer*, 133 N.J. 347, 355-56 (1993) (concluding that "[w]hen both liability and immunity appear to exist, the latter trumps the former"). Because Plaintiff has not introduced sufficient evidence at trial to substantiate the damages element of his negligence claims under New Jersey law, the Court **grants** the City's motion as to Plaintiff's negligence claims and **denies** Plaintiff's request for reconsideration.

## IV.    CONCLUSION

For these reasons, the City's Motion for Judgment as a matter of law is **GRANTED**.

DATE: April 8 , 2026

WILLIAM J. MARTINI, U.S.D.J.

8