## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ERIC KELLEY,

Plaintiff,

v.

RICHARD REYES, et al,

Defendants.

No. 19-cv-17911 (WJM)

**OPINION**

### WILLIAM J. MARTINI, U.S.D.J.:

After a hard-fought three-week jury trial in this long-running civil rights case, a jury returned a verdict in favor of Plaintiff Eric Kelley for $12 million against Defendants Richard Reyes for fabrication of evidence, deliberate deception, coercion, and conspiracy; Lori Hillas as Executor of the Estate of Louis Stell ("Stell") for fabrication of evidence, coercion, supervisory liability, conspiracy, and negligent supervision and training, and Raymond Reid for supervisory liability, conspiracy, and negligent supervision and training. ECF No. 483 ("Jury Verdict").[1]   At the close of Plaintiff's case, the Court granted Defendant City of Paterson's (the "City" or "Paterson") Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(a) as to Plaintiff's claims under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978), and state-law negligence, while denying all Rule 50 motions by the other Defendants. ECF No. 484 ("JMOL Order"); ECF No. 486 ("JMOL Opinion"), 2026 WL 948278 (D.N.J. Apr. 8, 2026).

Now before the Court are renewed motions for judgment as a matter of law by Defendants Reyes and Reid, as well as Plaintiff's motion to alter the judgment to reinstate the state-law negligence counts against Paterson. ECF Nos. 495 ("Reyes Motion"), 494 ("Reid Motion"), 489 ("Plaintiff Motion") (collectively, "the Motions"). The Motions are fully briefed, and the Court declines to hold oral argument. Fed. R. Civ. P. 78(b); L. Civ.

---

[1] Although not explicit on the Jury Verdict sheet, the jury's findings also support liability under the New Jersey Civil Rights Act. Tr. 2593:22-25 (instructing the jury, "To find any defendant was liable for any federal civil rights claims under 42 U.S.C. Section 1983 . . . then you must also find the defendants liable under New Jersey Civil Rights Act"); *Mervilus v. Union Cnty.*, 73 F.4th 185, 193 n.4 (3d Cir. 2023) ("The New Jersey Civil Rights Act is interpreted analogously to § 1983, so [Plaintiff's] claims under that statute rise and fall with his parallel § 1983 claims." (citation modified)).

R. 78.1(b). After careful consideration of the parties' submissions, and for the reasons set forth below, the Motions are **DENIED**.

## I.    BACKGROUND

The entire factual and procedural history of this case is set forth in more specificity in the Court's prior opinions and need not be repeated at length here. *See* ECF Nos. 266, 2025 WL 618207 (D.N.J. Feb. 26, 2025) ("SJ Opinion"); 332, 2025 WL 2792838 (D.N.J. Oct. 1, 2025) ("Reconsideration Opinion'); 382, 2025 WL 3484931 (D.N.J. Dec. 4, 2025) ("Bifurcation Opinion"). The Court provides only some of the pertinent facts, and the lengthy trial record contains additional evidence that supports the Jury Verdict, which the Court considered and summarizes throughout this Opinion for simplicity.

In short, this trial involved Plaintiff Eric Kelley's claims that the Defendant police officers violated his constitutional rights, leading to his conviction for the 1993 robbery of a video store and murder of a store clerk, Tito Merino, and imprisonment for more than 24 years. Tr. 91:2-17. Subsequent testing of DNA evidence on a hat left at the crime scene led a state court to vacate Plaintiff's convictions, and the State declined to retry him. *Id.* 2575:16-17, 2576:8-10, 2577:1-10. Plaintiff then brought this lawsuit under 42 U.S.C. § 1983 and state law, alleging violations of his constitutional rights, as well as state law negligence. *Id.* 2584:3-2585:4, 2590:19-2591:2. Plaintiff argues that he is innocent and that his confession was fabricated and coerced. *Id.* 274:24-275:13. Separately, Plaintiff filed suit against the State of New Jersey and received a $1 million settlement from the State in that lawsuit. ECF No. 392 ("Pretrial Order"), at § 3, ¶ 28.

Opening statements and witness testimony began on March 6, 2026, and all individual officers and Plaintiff testified throughout trial. Tr. 257, 259. At trial, Defendants attempted to offer into evidence the August 11, 1993 statement of Dennis Williams, an eyewitness to the July 28, 1993 homicide, who claimed that Plaintiff said to him on the day of the murder, "[W]hy did we kill that guy if we wanted a bag of dope?" ECF No. 511-5, Pl. Ex. 121 ("Williams Statement"), at 5. After hearing from the parties, the Court excluded that statement as inadmissible hearsay and otherwise irrelevant. Tr. 1422:3-20. No Defendant attempted to compel Mr. Williams's live testimony.

Additionally, before trial, the parties agreed to conduct a *de bene esse* deposition of Ms. Alice Nieves Hernandez ("Ms. Nieves") due to medical conditions that prevented her live attendance at trial. ECF No. 355. Then, at trial, the City requested to reopen the deposition or otherwise compel Ms. Nieves's live trial testimony to ask additional questions, with counsel stating that he would "fall on [his] sword" for inadvertently failing to do so during the deposition. Tr. 29:16-30:2. The City pointed to post-deposition, unsworn allegations of impropriety involving an investigator for Plaintiff, made by a different witness who also once spoke with Ms. Nieves, as a reason to reexamine her. Tr. 461:9-13, 462:1-24. The Court denied the request multiple times. *Id.* 463:6-10, 472:4-13.

2

After Plaintiff rested his case, all present[2] Defendants brought motions for judgment as a matter law under Federal Rule of Civil Procedure 50(a), which the Court deferred until the close of Defendants' case. Tr. 2265:11-2266:17. The Court denied all individual Defendants' motions and granted the City's motion before closing arguments, issuing a written opinion as to the City on April 8, 2026. *See generally* JMOL Order; JMOL Opinion. After closings, the Court instructed the jury, and the jury returned its verdict against Reyes, Stell, and Reid. *See generally* Jury Verdict. The Motions followed.

## II.   DEFENDANTS' MOTIONS

First, the Court addresses the motions by Defendants Reyes and Reid, before turning to Plaintiff's Motion. As explained below, the Court **denies** both motions.

### A.   <u>Legal Standard</u>

After the Court denies a motion for judgment as a matter of law under Rule 50(a), and the jury renders a verdict, the losing party "may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). A Rule 50(b) motion "can only be made on grounds specifically advanced in a motion for a directed verdict at the end of plaintiff's case." *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 220 (3d Cir. 2021). The Court can grant a Rule 50(b) motion "only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001) (quoting *Powell v. J.T. Posey Co.*, 766 F.2d 131, 133-34 (3d Cir. 1985)). Given the Jury Verdict in favor of Plaintiff, the Court "examine[s] the record in a light most favorable to the plaintiff, giving [him] the benefit of all reasonable inferences, even though contrary inferences might reasonably be drawn." *In re Lemington Home for the Aged*, 777 F.3d 620, 626 (3d Cir. 2015) (quoting *Dudley v. S. Jersey Metal, Inc.*, 555 F.2d 96, 101 (3d Cir. 1977)).

In the alternative, Defendants request a new trial under Rule 59, which provides that a court may grant a new jury trial "on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A court may grant a new trial "if the jury's verdict is against the clear weight of the evidence, and a new trial is necessary to prevent a miscarriage of justice." *TQ Delta, LLC v. 2Wire, Inc.*, 486 F. Supp. 3d 803, 806 (D. Del. 2020) (citation modified). Another basis is "when improper conduct by an attorney or the court unfairly influenced the verdict." *Zarow-Smith v. N.J. Transit Rail Operations, Inc.*, 953 F. Supp. 581, 585 (D.N.J. 1997). Importantly, a new trial should be granted only where the verdict "resulted in a miscarriage of justice" or where the verdict "cries out to be overturned or shocks [the] conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352-53 (3d Cir. 1991). The Court may not "substitute its judgment of the facts and the credibility of the witnesses

---

[2] Defendant Stell was unrepresented, as his estate could not find counsel. *See generally* ECF No. 394, 2026 WL 25926 (D.N.J. Jan. 5, 2026).

for that of the jury." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) (quoting *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 201 (3d Cir. 1996)).

## B.   Weight and Sufficiency of the Evidence

Both Defendants Reyes and Reid argue that the Jury Verdict was against the weight of the evidence. Reyes Mot. 4-8; Reid Mot. 13-22. As explained below, there was legally sufficient evidence underlying each count, and the verdict was not against the weight of the evidence.

### 1.   Reyes – Fabrication, Deliberate Deception, & Coercion

In effect, Detective Reyes argues that his story of the case is correct, and Plaintiff's narrative is not. Reyes argues that Plaintiff "produced no factual evidence of wrongdoing" and that the verdict rested on speculation. Reyes Mot. 4-5. Reyes asserts that Plaintiff's confession was a result of fear of his co-defendant, Ralph Lee. *Id.* 4, 6-7.

Under 42 U.S.C. § 1983, a fabrication claim requires Plaintiff to prove that a defendant "formulated or submitted false evidence willfully, knowingly, or with a reckless disregard for its truth." *Mervilus v. Union Cnty.*, 73 F.4th 185, 194-95 (3d Cir. 2023); Tr. 2585:11-23. A deliberate deception claim requires Plaintiff to prove that a defendant knowingly used false or fabricated evidence, or concealed evidence to create false testimony, which would have been favorable to the Plaintiff, to deceive the trial court. Tr. 2586:4-17; *Dennis v. City of Phila.*, 19 F.4th 279, 291-92 (3d Cir. 2021). A coercion claim requires Plaintiff to prove that his confession was the result of coercive police activity, such that his will was overcome when he confessed, after evaluating the totality of the circumstances. Tr. 2586:24-2587:21; *Halsey v. Pfeiffer*, 750 F.3d 273, 303-04 (3d Cir. 2014). Plaintiff must also prove causation. Tr. 2585:21-23, 2586:15-17, 2587:20-21.

As a threshold matter, the jury was entitled to believe Plaintiff's testimony that he was innocent, given that his DNA was nowhere on the hat left at the scene. Tr. 380:2-7, 2148:20-2149:2, 2575:16-17. And the jury was further entitled to believe that because Plaintiff was innocent, he was unaware of the specific details of the crime that were included in his confession, making the confession false. *Id.* 2169:25-2170:10; Recons. Op. 4-5. As Plaintiff notes, officers picked him up separately from Mr. Lee, keeping the two separated during their interrogations, thereby preventing Mr. Lee from influencing him. Trial. Tr. 716:17-19, 1021:1-7, 2151:23-25; ECF No. 511 ("Plaintiff Opposition"), at 12.

Therefore, because the jury could find that Plaintiff was innocent, the jury could readily conclude that Reyes fabricated and coerced Plaintiff's confession, deliberately deceiving the state trial court. Indeed, Reyes admitted that either Plaintiff committed the crime, or the police fed him non-public information to include in the confession, further supporting the verdict. ECF No. 493 ("Pre-Recorded Trial Testimony"),[3] at 2, 221:19-

---

[3] Plaintiff played these deposition excerpts at trial, but they are not reflected on the official trial transcript.

222:09. Moreover, as to the intent elements of each claim, the jury could find that Reyes knew that suspects with cognitive limitations could be susceptible to giving false confessions, and the jury did not need to credit Reyes's testimony that he did not observe any signs of cognitive impairment from Plaintiff. Tr. 799:13-800:11. The jury was free to credit Dr. Katherine Porterfield, expert for the Plaintiff, who testified based on her personal examination that Plaintiff is cognitively limited and has trouble with social judgment. *Id.* 2027:6-10, 2046:23-2047:2. Accordingly, the jury could credit Plaintiff's testimony and conclude that Reyes improperly, and with knowledge that doing so was improper, told Plaintiff that he could leave if he inculpated himself. *Id.* 745:24-746:2, 2150:20-25, 2180:6-10. Similarly, the jury could also find that Reyes fabricated the timeline of when Plaintiff signed the confession and identified a poloroid photo of Mr. Hancock. Tr. 733:7-9, 733:17-22, 750:3-9, 751:3-8, 751:12-14, 779:6-13, 779:25-780:11, 780:18-781:24; *see* Pl. Opp'n 15-17.

Additionally, the jury could also find that Reyes deliberately deceived the court by failing to provide the full picture of the confession to the prosecutor and by failing to acknowledge that the police's confidential source identified someone with a different name and identifying features than Plaintiff. *See, e.g.,* Tr. 1051:24-1052:1-3 (Reyes acknowledging that he "wish[ed] that [he] would have added a ton more information" into his report); Pre-Recorded Trial Test. 82, 333:24-334:06, 337:09-13 (Reyes acknowledging that his report lacked information that identified someone with initials "KC," not "EK"). As to coercion, evaluating the totality of the circumstances as instructed, a jury could find that Stell slapped Plaintiff in the head, and Stell and Reyes held him for hours to coerce his confession. Tr. 2045:24-2046:22, 2150:8-12, 2171:12-2172:1, 2182:20-2183:14, 749:25-750:2, 764:10-20, 2587:2-19.

Accordingly, the verdict against Detective Reyes on the three civil rights violations was not against the weight of the evidence. Essentially, the jury faced two competing narratives: either Reyes performed textbook police work in identifying a suspect, obtaining a confession, and then securing a conviction, or Reyes deliberately fabricated evidence, deceived the court, and compelled Plaintiff to incriminate himself for a crime he did not commit. The jury deliberated and found the latter narrative more likely. Jury Verdict 1-3. For example, the jury could credit James Thompson's testimony that he told police that he did not see Plaintiff or Mr. Lee in the store at the time of the murder and discredit Reyes's denial of the same. Tr. 1204:6-1205:11, 1214:23-25, 937:5-10; ECF No. 511-14, Pl. Ex. 16, at 11 (omitting any information about Thompson's familiarity with Plaintiff and Mr. Lee). At this stage, the Court must credit Plaintiff's evidence and "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151 (2000). Witness credibility must "be weighed and decided by the jury." *Mannke v. Benjamin Moore & Co.,* 375 F.2d 281, 283 (3d Cir. 1967). Because there was sufficient, non-inferential evidence supporting liability against Reyes, the Jury Verdict must stand, notwithstanding the other issues raised below. *But see Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 211 (3d Cir. 1992) (affirming a

5

grant of a motion for a new trial where there were "questionable remarks made by plaintiffs' trial counsel" in a "highly inferential case").

### 2. Reid and Reyes – Conspiracy

Both Reid and Reyes argue that there was insufficient evidence to sustain a verdict of civil conspiracy against them. Reid Mot. 18-22; Reyes Mot. 7-8; Tr. 2338:4-8.

To prove a civil conspiracy, Plaintiff needed to show agreement and concerted action, which can be inferred from circumstantial evidence. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018); SJ Op. 20. Conspiracy "requires a separate underlying tort as a predicate for liability." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999) (collecting cases).

Here, there was sufficient circumstantial evidence to support the jury's finding of conspiracy against both Reyes and Reid. As to Reyes, there was ample circumstantial evidence that Reyes and Stell conspired, as both were together during the interrogation. Tr. 785:7-786:1; Pre-Recorded Trial Test. 47, 167:18-21. Reyes also worked with Reid on the investigation, given that Reid was his supervisor, which is enough circumstantial evidence of conspiracy on its own. *Id.* 820:13-821:4; *see Sanders v. Jersey City*, No. 18-cv-01057, 2021 WL 1589464, at *21 (D.N.J. Apr. 23, 2021) (concluding that two officers working jointly together on an investigation was sufficient circumstantial evidence of conspiracy). Furthermore, as to Reid specifically, contrary to his arguments that a conspiracy finding cannot rest solely on circumstantial evidence, it is simply enough that Reid signed off on Reyes's notes, having had the opportunity to speak with Reyes, and having written and shared his own notes on the investigation, which flagged several issues. ECF No. 512 ("Reid Reply"), at 3-4; Tr. 820:10-821:9; Pre-Recorded Trial Test. 80, 325:25-326:03; *see Jutrowski*, 904 F.3d at 297 (identifying evidence of conversations between officers, the passage of time, and irregularities in the investigation that could all support a conspiracy finding). Although there is no direct evidence of an agreement from trial, there is sufficient circumstantial evidence for the jury to find a civil conspiracy.

### 3. Reid – Supervisory Liability, Negligent Supervision

Next, Reid argues that the jury's verdict was against the weight of the evidence as to (1) Reid being a supervisor and (2) negligence. Reid Mot. 13-18.

A finding of supervisory liability requires that Plaintiff prove either that Defendant Reid directed Reyes to violate Plaintiff's rights, or that Reid had both actual knowledge of the violations and acquiesced to them. Tr. 2589:11-17; *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d. Cir. 2004). Similarly, as to the state-law negligent supervision claim, Plaintiff had to prove that (1) Reid knew or had reason to know of Reyes's particular unfitness, incompetence, or dangerous attributes; (2) Reid could have reasonably foreseen that those qualities created a risk of harm; and (3) proximate causation. Tr. 2592:8-2593:2; *G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019).

Reid's central argument is that because Defendant Stell was factually Reyes's supervisor for this investigation, the jury could not find that Reid was the supervisor. Reid Mot. 14-16. Of course, a subordinate may have multiple supervisors, so this argument fails. *See, e.g., Harris v. Hudson Cnty.*, No. 22-cv-06729, 2026 WL 973012, at *6 (D.N.J. Apr. 10, 2026) (permitting a supervisory liability claim to proceed against multiple supervisors who had notice and failed to act). Reid himself admitted that he was Reyes's supervisor and that he "reviewed and signed off on [Reyes's] report." Pre-Recorded Trial Test. 80, 325:25-326:02. Reid further admitted that he "took detailed pages of notes" on the report, that he "knew what was and wasn't in that report" and that it was his "duty" and "responsibility as a supervisor" to do so. *Id.* 326:04-13. Reid also acknowledged that he would have spoken to Reyes about any incomplete or underdeveloped aspects of the report, demonstrating that he played a supervisory role in the investigation even though Stell was the immediate supervisor of the investigation. *Id.* 56-57, 216:23-217:04, 217:10-21. Additionally, Lieutenant Clark testified that it would have been "nearly impossible" for fabrication to occur without Stell or Reid's knowledge. Tr. 1446:3-13.

Although Reid was not present during the interrogation, Pre-Recorded Trial Test. 44, 154:04-11, the jury's supervisory liability finding rests on his actions afterward: reviewing and signing off on Reyes's report. *See McKenna v. City of Phila.*, 582 F.3d 447, 460-61 (3d Cir. 2009) (concluding that personal direction or actual knowledge and acquiescence is sufficient to support supervisory liability, rather than mere presence in the vicinity). Combined, there is sufficient record evidence for a jury to reasonably conclude that Reid acquiesced in the unconstitutional conduct by signing off on it, with knowledge that it occurred.

Likewise, as to negligent supervision, there was sufficient evidence for the jury to conclude that Reid knew of red flags in Reyes's report and that it was foreseeable that including such red flags could have created the risk of an erroneous conviction, yet Reid failed to act on them. *See, e.g.*, Pre-Recorded Trial Test. 89, 366:01-366:08 (agreeing that destruction of notes would have been "a cause of grave concern"). Indeed, Reid himself flagged specific, concerning aspects of Reyes's report. Pl. Opp'n 28; ECF No. 511-10, Pl Ex. 7 (stating that Reid was "concerned with Thompson" and that he wanted to know the plan for "Carmen from Bobs"). Finally, as to causation, Reid needed to sign off on Reyes's report before it went to the prosecutor. Pre-Recorded Trial Test. 59, 240:18-241:07. Therefore, sufficient evidence exists to sustain all federal and state supervisory claims. Defendants' renewed motions for judgment as a matter of law are **denied**.

### C.    **Motion for a New Trial**

In the alternative to judgment as a matter of law, both Reid and Reyes make several arguments for a new trial on the following grounds: improper exclusion of evidence, failure to bifurcate, inadequate limiting instructions, prejudicial comments by Plaintiff's counsel, erroneous jury instructions and verdict sheet, failure to grant qualified immunity, and failure to reduce damages to account for Plaintiff's settlement with the State of New Jersey. None of these arguments meets the high standard for granting a new trial.

7

### 1. Exclusion of Evidence

First, both Reid and Reyes argue that the Court should grant a new trial because the Court's exclusion of two lines of testimony was improper. Reyes Mot. 8-15; Reid Mot 32-38. As explained below, the Court properly excluded this evidence on the merits, and the exclusion thereof otherwise does not warrant a new trial.

#### a. *Williams statement*

First, Reyes and Reid both move for a new trial on the basis that the Court erred by excluding a statement by Dennis Williams, given to police on August 11, 1993, two weeks after Plaintiff's confession, in which Mr. Williams asserted that Plaintiff inculpated himself. Reyes Mot. 8-13; Reid Mot. 33-38; Reid Reply 9-10.

Nonetheless, the Court did not err because the Williams Statement is textbook hearsay: Mr. Williams, who never testified, said that Plaintiff said that he killed Mr. Merino. *See* Fed. R. Evid. 801(c) (defining hearsay). Even if the Williams Statement were offered for a nonhearsay purpose, the Court properly excluded it to avoid jury confusion. *See* Fed. R. Evid. 403; *United States v. McGlory*, 968 F.2d 309, 332 (3d Cir. 1992) (stating that the Third Circuit "has disfavored the admission of statements which are not technically admitted for the truth of the matter asserted, whenever the matter asserted, without regard to its truth value, implies that the defendant is guilty of the crime charged"). And such confusion would have vastly outweighed any possible probative value of a statement made two weeks after a fabricated and coerced confession. Tr. 1422:3-20; *see United States v. De Peri*, 778 F.2d 963, 973 (3d Cir. 1985) (affirming exclusion of statements made outside the time window at issue offered to show the speaker's state of mind as irrelevant). Therefore, this exclusion of evidence was both proper and not a sufficient basis for a new trial.

#### b. *Nieves* de bene esse *deposition*

Second, Reyes argues that the Court's decision not to require Ms. Alice Nieves Hernandez to testify live in person after her *de bene esse* deposition (to which all defendants consented before trial) rendered trial "fundamentally unfair." Reyes Mot. 13-15. It is not, because Reyes did not timely join the motion to compel her live testimony, and because he did not raise the issue in his Rule 50(a) motion. Tr. 2337:1-2338:8 (declining to mention Ms. Nieves); *see Williams v. Runyon*, 130 F.3d 568, 571-72 (3d Cir. 1997) (explaining that "[u]nder normal circumstances" where the plaintiff raises waiver, "a defendant's failure to raise an issue in a Rule 50(a)(2) motion with sufficient specificity to put the plaintiff[] on notice waives the defendant's right to raise the issue in their Rule 50(b) motion").

Even as to the merits, the Court did not err by barring Defendants from hauling Ms. Nieves into court after her *de bene esse* deposition. Defendants all agreed to Ms. Nieves's *de bene esse* deposition, and counsel for Reyes had the opportunity to attend the deposition and question Ms. Nieves under oath. ECF No. 493-2, at 3-6 (showing that counsel for both Reyes and Reid attended the deposition and asked questions). Although Reyes claims that

8

post-deposition allegations of impropriety from a different witness involving an investigator for Plaintiff merit reopening her deposition, those allegations were unsworn, underdeveloped, tangential, and far too speculative to warrant reopening the *de bene esse* deposition, as the Court explained at the time. *See* ECF No. 419; Tr. 464:6-9, 466:10-467:13, 472:4-13.[4] Furthermore, Reyes's tactical decision not to further develop the record is not a sufficient basis for a new trial. *See United States v. Alper*, 449 F.2d 1223, 1234 (3d Cir. 1971) ("Where it is clear that the defendant knew of the existence of evidence and willfully failed to take steps to secure its availability he cannot urge that evidence as a ground for a new trial.").

## 2. Bifurcation and *Monell* Evidence

Next, Reyes and Reid argue that the Court's failure to bifurcate trial resulted in sufficient prejudice as to warrant a new trial, particularly given that the Court granted judgment as a matter of law to the City. Reid Mot. 22-28; Reyes Mot 16-18. Reid and Reyes also argue that the Court's limiting instruction on the implications of its dismissal of the City was inadequate. Reid Mot. 22-28; Reyes Mot. 16, 18.

Neither party moved to bifurcate before trial—only the City did so, ECF No. 357—so they cannot complain now after trial. Even so, the Court did not err by declining, in its discretion, to bifurcate trial. *See Thabault v. Chait*, 541 F.3d 512, 529-30 (3d Cir. 2008) (explaining that bifurcation is within the Court's discretion). As the Court previously explained, the *Monell* evidence overlapped in part with the evidence of direct liability. Bifurcation Op. 4. Although Reid argues that he was found "guilty by association," Reid Mot. 24-25, the jury found no liability for Defendant Jordan and hung on Defendants Nieves and Clark, Jury Verdict 4-7, belying such an inference. *See Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 191 (3d Cir. 2019) (recognizing that if there were improper prejudice resulting from consideration of struck testimony, the jury would not have returned a split verdict).

As to the Court's explanation to the jury regarding Paterson being dismissed, there is no prejudice, and certainly nothing to warrant a new trial. After discussion with the parties, the Court gave the following instruction, to which counsel for Reyes and Reid did not object: "[T]he City of Paterson is no longer a party to this action, for legal reasons. You are not to speculate as to why. You are instructed that you must disregard all testimony and evidence previously admitted dealing with all the newspaper articles. That is an instruction." Tr. 2451:16-22; *see* 2395:15-2396:2 (previewing the instruction with no objection); *cf. Ansell v. Green Acres Contr. Co.*, 347 F.3d 515, 525-26 (3d Cir. 2003) (recognizing waiver where the party failed to request a limiting instruction). The Court's instruction properly balances the risk of confusion with a stern caution against considering

---

[4] The Court did not preclude Defendants from calling Plaintiff's investigator as a witness to further develop the testimony and lay a sufficient basis for compelling Ms. Nieves Hernandez's live testimony, yet no Defendant did so. Tr. 464:1-2.

*Monell* evidence. *See Smith v. Arizona*, 602 U.S. 779, 818 (2024) (Alito, J., concurring) (noting "only one situation in which a limiting instruction is insufficient," which involves extrajudicial, incriminating statements of a non-testifying criminal codefendant); *accord* Recons. Op. 7.

Similarly, although Reid complains that the Court failed to mention yet again during final instructions that the City was dismissed, Reid cannot identify any spillover prejudice given that the Court *gave* a limiting instruction—earlier in trial, at the appropriate juncture. Reid Reply 9; *see Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 148 & n.5 (3d Cir. 2002) (emphasizing "the ability of the jury to follow instructions" and noting the lesser risk of prejudice over the course of a lengthy trial). Reid also perplexingly claims prejudice from the Court's March 21, 2026 JMOL Order dismissing Paterson before summation, Reid Mot. 26-27, even though such dismissal came two days before closing arguments—ample time for Defendant's counsel to make adjustments. The Court need not expressly call out Paterson, and doing so risks further confusion. A new trial is therefore unwarranted.

### 3. Comments by Counsel

Additionally, Reyes argues that comments by counsel for Plaintiff regarding Plaintiff's innocence tainted the trial, resulting in prejudice. Reyes Mot. 18-20. Reyes also complains that the Court's curative instruction was inadequate. *Id.*

At trial, the Court repeatedly instructed the jury that comments by counsel are not evidence. *See, e.g.*, Tr. 270:13-16; 318:19-21; 716:12-15, 2503:21-23; 2569:18-2570:3; 2571:15-20. Where such comments crossed the line, the Court issued curative instructions, which juries are presumed to follow. *See, e.g.*, Tr. 2563:23-2567:11 (no objection by Reyes); *id.* 2585:8-10 (clarifying that "there has been no prior legal determination in any postconviction proceeding in this matter as to Mr. Kelley's innocence"); *United States v. Savage*, 85 F.4th 102, 119 (3d Cir. 2023) (recognizing the "presum[ption] that the jury will follow limiting instructions and will be able to appropriately analyze the evidence and issues" and collecting cases). The Court further instructed the jury not to speculate. Tr. 2570:21-2571:14. Therefore, there was no error from the Court's curative instructions, much less one warranting a new trial. *See Johnson*, 283 F.3d at 147-48 & n.5 (affirming denial of a motion for a new trial where the remarks were limited, never admitted into evidence, and accompanied by a limiting instruction). Reyes also complains that the Court failed to cure comments not made before the jury, but it need not do so. *See* Reyes Mot. 19-20; Tr. 2565:3-16; *id.* 2567:11-14 (bringing out the jury). In sum, the several comments by Plaintiff's counsel during opening and closing statements, which the Court appropriately addressed, do not warrant a new trial.

### 4. Instructions & Verdict Sheet

Next, Reyes argues that the jury instructions and verdict sheet were erroneous, complaining that the instructions "reduced the level of proof of the elements of the causes of action by failing to identify, explain and require the jury to find a deprivation of a constitutional right." Reyes Mot. 20-24. Reyes did not raise a specific objection at the

time—notwithstanding the Court's invitation for the parties to propose an alternative verdict sheet, Tr. 2372:5-9—so his post-trial objections are improper. *See, e.g., Jacobson v. BMW of N. Am., LLC*, 376 F. App'x 261, 265 (3d Cir. 2010) ("A party who has not clearly and specifically objected to a jury instruction is deemed to have waived that challenge."); *Briggs v. Temple Univ.*, 339 F. Supp. 3d 466, 522 (E.D. Pa. 2018) (noting that failure to object specifically to a jury instruction constitutes waiver and collecting cases).

Even so, the Court "has substantial discretion with respect to specific wording of jury instructions" so long as the instructions "accurately and fairly sets forth the current status of the law." *Douglas v. Owens*, 50 F.3d 1226, 1233 (3d Cir. 1995). As discussed above, there is sufficient evidence supporting that the jury found a constitutional deprivation, and the verdict sheet itself expressly specifies the constitutional rights at issue. Jury Verdict 1-3 (stating as to fabrication and deliberate deception, the deprivation of the "constitutional right to liberty without due process" and as to coercion, the "constitutional right against self-incrimination"). And the jury instructions themselves made clear that "Plaintiff ha[d] the burden of proving his case by what is called the preponderance of the evidence." Tr. 2572:23-2573:10; *id.* 2601:23-25 ("[E]very one of you must agree that the plaintiff has met [his] burden by a preponderance of the evidence."). Reyes points to no requirement that the jury articulate a specific constitutional violation on the verdict sheet itself. Nor could he, as a special verdict form is not mandatory. *See* Fed. R. Civ. P. 49(a) (permitting, not requiring, a special verdict form). Therefore, Reyes's merits arguments also fail.

### 5. Qualified Immunity

In addition, Reid,[5] joined by Reyes,[6] argues that qualified immunity was proper, and the Court did not rule on the issue. Reid Mot. 28-32; Reyes Mot. 24-25. It did. JMOL Order ("[A]ll other Motions for Judgment as a Matter of Law are DENIED."). The Court merely deferred argument on the Rule 50(a) motions until after the close of Defendants' case to avoid keeping the jury any longer than necessary. Tr. 2257:17-2258:6; 2265:4-12, 2268:1-10.

Moreover, Reid argues that the Court treated him differently than the City by granting the City's motion "on the same constitutional claims." Reid Mot. 30, 32. But the Court granted judgment as a matter of law to the City on a wholly different constitutional theory—*Monell* liability—which has a different underpinning than the direct constitutional violations alleged here. The claims are simply not identical, and moreover, qualified

---

[5] The Court gives Reid the benefit of the doubt that his counsel may have jumped the gun in filing an initial Rule 50(a) motion that did not expressly reference qualified immunity. *Compare* ECF No. 452 (first motion), *with* ECF No. 460 (second, nearly identical motion).

[6] As Plaintiff notes, Reyes did not expressly raise qualified immunity in his oral Rule 50(a) motion. Tr. 2336:24-2338:9.

immunity is irrelevant for municipal defendants. *See Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017) ("[Q]ualified immunity does not shield municipal entities.").

Additionally, there is ample evidence supporting a denial of qualified immunity, as knowingly or recklessly violating constitutional rights is not objectively reasonable conduct justifying qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (recognizing that qualified immunity fails if an officer "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury" (citation modified)); Recons. Op. 7 (declining to reconsider denial of qualified immunity for the claims against Reid). That evidence came out at trial, as Plaintiff highlights. Pl. Opp'n 62.

To the extent that Reid and Reyes complain that the Court did not further develop the verdict sheet to include a special interrogatory regarding qualified immunity: (1) only the City, not any Individual Defendant, raised the issue, Tr. 2366:23-2372:9; (2) doing so was unnecessary in light of the Jury Verdict finding violations of Plaintiff's constitutional rights; and (3) Reyes and Reid abandoned this argument after the verdict was returned, *see id.* 2633:1-10 (no counsel renewed the argument after the verdict was returned). Reid otherwise seeks to rehash his supervisory liability arguments, *see supra* II(B)(3), but it was clearly established as of 1993 that a supervisor could not, with knowledge of constitutional violations, acquiesce in them. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988) (recognizing that a supervisor can be held liable under § 1983 based on "personal direction or [] actual knowledge and acquiescence"); Recons. Op. 7. Defendants' qualified immunity arguments therefore fail.

### 6. Remittitur

Lastly, Reid, joined by Reyes, argue that the jury's $12 million verdict should be reduced by the $1 million settlement payment that Plaintiff received from resolving a separate lawsuit against the State of New Jersey. Reid Mot. 38-40; Reyes Mot. 25. These arguments were not raised in motions in limine, nor in Rule 50(a) motions, so they are forfeited. *See Harbor Bus. Compliance Corp. v. Firstbase.io, Inc.*, 152 F.4th 516, 529 (3d Cir. 2025) ("Arguments inadvertently left out of a Rule 50(a) motion are forfeited.").

But even so, the $1 million that Plaintiff received was from the State of New Jersey, not any of the Defendants in this action. Pretrial Order § 3, ¶ 28; *see* N.J.S.A. 52:4C-2 (authorizing suit against the New Jersey Department of the Treasury). The State of New Jersey is not (and cannot be) a party to this federal damages lawsuit, so no remittitur is permitted. *See Dorsett v. N.J. State Police*, No. 04-cv-05652, 2007 WL 556890, at *5 & n.7 (D.N.J. Feb. 15, 2007) (explaining that because New Jersey did not waive its Eleventh Amendment immunity, actions under N.J.S.A. 52:4C-1 must proceed separately in state court).

In conclusion, considering all the arguments, Reid and Reyes's motions for a new trial, or to alter the judgment, are **denied**.

## III.    PLAINTIFF'S MOTION

Separately, Plaintiff moves to alter the judgment to impose negligence liability as a matter of law against the City of Paterson after the Court dismissed Plaintiff's negligence claim against the City for failing to meet the requirements under the New Jersey Tort Claims Act ("TCA") to obtain pain and suffering damages from a public entity, N.J.S.A. 59:9-2(d) (the "verbal threshold"). As discussed in more detail below, the verbal threshold limits recovery for pain and suffering damages from a public entity for negligence unless there is a "permanent loss of a bodily function, permanent disfigurement, or dismemberment where the medical treatment expenses are in excess of $3,600.00." *Id.* 59:9-2(d)(2)(a). In support of his motion, Plaintiff argues (1) that the City waived the issue; (2) that his PTSD constitutes a permanent injury sufficient to vault the threshold; and (3) that his damages are not pain and suffering under New Jersey law. As explained below, all three arguments fall short, so the Court cannot alter the judgment.

### A.    Legal Standard

Federal Rule of Civil Procedure 59(e) permits motions to "alter or amend a judgment." Fed. R. Civ. P. 59(e). Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Ship. Co. v. Baker*, 554 U.S. 471, 486 (2008) (quoting 11 Wright & Miller's Federal Practice & Procedure § 2810.1 (2d ed. 1995)). In effect, a motion under Rule 59(e), in this type of case where the issue was raised at trial, is a motion for reconsideration, which should only be granted based on "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

### B.    Waiver

As an initial matter, Plaintiff argues that the City waived this issue during the litigation. Pl. Mot. 3-10. The City counters that it pleaded the issue in its Answer, and in any event, the issue is not waivable. ECF No. 509 ("Paterson Opposition"), at 4-11.

As the Court already explained in the JMOL Opinion, although the verbal threshold is waivable, the City did not waive the threshold. JMOL Op. 8. The Third Circuit has recognized that pleading the verbal threshold in an answer suffices to avoid waiver. *See Charpentier v. Godsil*, 937 F.2d 859, 863-64 (3d Cir. 1991) (holding that there was no waiver based in part by other defendants raising the issue in their answers); *Drippe v. Gototweski*, 434 F. App'x. 79, 81 (3d Cir. 2011) (holding that failure to move for summary judgment "based upon this affirmative defense in no way means that he waived the defense; instead, he waived only his ability to receive summary adjudication of that defense"). The New Jersey Supreme Court has also held that pleading the verbal threshold as an

13

affirmative defense is the "[b]etter practice" and avoids waiver. *See Rivera v. Gerner*, 446 A.2d 508, 512-13 (N.J. 1982) (holding that there was "no waiver of the defense of immunity or limitation of liability under N.J.S.A. 59:9-2(d)" where the "defendant's answer asserted the Tort Claims Act generally as an affirmative defense"). The City listed the verbal threshold as its eighteenth affirmative defense, thereby avoiding waiver. ECF No. 90, at 19 ("The State pendent claims of Plaintiff are barred by N.J.S.A. 59:1-1, et seq., including, but not limited to, 59:2-2; 59:2-3; 59:2-4; 59:3-2; 59:3-3; 59:3-5; 59:3-8; 59:3-9; 59:5-2, 59:5-4; 59:9-2; and 59:10-4."). Accordingly, the City did not need to do anything during Plaintiff's case, or before trial, to preserve the issue until making its Rule 50(a) motion.

By contrast, while Reid listed the verbal threshold as his twenty-first and twenty-third affirmative defenses, ECF No. 21, at 24, he waived the defense by failing to raise it in his Rule 50(a) motion and by failing to join the City's motion. *See Williams v. Runyon*, 130 F.3d 568, 571-72 (3d Cir. 1997) (holding that a defendant's failure to raise waiver in a Rule 50(a) motion constitutes waiver where the plaintiff notes the failure to do so in opposition). The City also "lacks standing to assert an affirmative defense on behalf of another party" and cannot obtain dismissal of the negligence counts on Reid's behalf. *U.S. ex rel. Patel v. Fid. Deposit & Disc. Bank*, No. 19-cv-01824, 2024 WL 5431441, at *4 (M.D. Pa. June 5, 2024).

### C.   The Verbal Threshold

Turning to the merits, Plaintiff argues first that he met the verbal threshold by introducing at trial evidence of his PTSD. Pl. Mot. 10-12. Second, Plaintiff argues that his damages were not for pain and suffering, so they do not fall under the ambit of the verbal threshold. *Id.* 13-22. The Court addresses each argument in turn.

#### 1.   The Monetary Prong

In short, the Court does not need to consider Plaintiff's argument that his PTSD constitutes a permanent injury because he admittedly failed to introduce more than $3,600 in medical expenses. Pl. Mot. 12 ("[N]o dollar figure was specifically presented."). The monetary prong of the verbal threshold is necessary component. *See Rivera*, 446 A.2d at 511 (explaining that "New Jersey alone incorporated a monetary threshold of $1,000 in medical expenses *and* a 'severity threshold' before liability attaches for pain and suffering" (emphasis added)); *Perez v. N.J. Transit Corp.*, 341 F. App'x. 757, 764 (3d Cir. 2009) (stating that the verbal threshold "requires that a plaintiff seeking pain and suffering damages against a public entity or public employee such as the defendants must show that he suffered: (1) an objective permanent injury *constituting at least $3,600 in medical treatment expenses and* (2) a permanent loss of a substantial bodily function." (emphasis added)); *see also J.H. v. Mercer Cnty. Youth Det. Ctr.*, 930 A.2d 1223, 1235 (N.J. Super. App. Div. 2007) ("In order to recover damages for pain and suffering, plaintiff must suffer a permanent injury *and* his medical expenses must exceed the monetary threshold of $3600." (emphasis in original)); *Rodwell v. City of Newark*, No. 11-cv-03522, 2013 WL 5469880, at *7 (D.N.J. Sept. 27, 2013) ("Although Plaintiff's psychological injuries are

14

sufficient to meet the threshold requirement of the NJTCA, Plaintiff has failed to set forth any evidence showing that her medical expenses exceed $3,600.").

Indeed, New Jersey's model jury instructions[7] expressly state that "the plaintiff must prove by a preponderance of the evidence that plaintiff sustained [a permanent loss of a bodily function OR a permanent disfigurement that is substantial OR a dismemberment] *and* has met the monetary threshold." New Jersey Courts, Model Civil Jury Charge § 8.70, https://www.njcourts.gov/sites/default/files/charges/8.70.pdf    [https://perma.cc/7FMK-D3ZP] ("NJ Model Charge") (emphasis added); *see* Pl. Mot. 16 (relying upon the model instructions). Plaintiff's failure to introduce any evidence of monetary expenses bars him from collecting pain and suffering damages from the City, as the Court previously held. JMOL Op. 8.

### 2. Pain and Suffering Damages under the TCA

Turning to Plaintiff's last argument that the verbal threshold does not apply to his damages, the Court concludes that because the jury awarded non-economic damages resulting from harm to the person, the verbal threshold bars Plaintiff's recovery from the City.

To begin, "[a]s with any question of statutory interpretation, we start with the plain language of the legislation." *DKM Residential Props. Corp. v. Twp. of Montgomery*, 865 A.2d 649, 654 (N.J. 2005). The term "pain and suffering," as defined shortly after the verbal threshold was enacted, "describe[s] not only physical discomfort and distress but also mental and emotional trauma which are recoverable as elements of damage in torts." *Pain and Suffering*, Black's Law Dictionary (5th ed. 1979); *see also Pringle v. Valdez*, 171 P.3d 624, 628-30 & n.4 (Colo. 2007) (collecting authorities from across the country and holding that "'pain and suffering' is commonly understood to encompass all noneconomic damages"). This broad definition of "pain and suffering" comports with the Legislature's intent to bar recovery for subjectively measured damages, absent the exceptions discussed above. *See Brooks v. Odom*, 696 A.2d 619, 622-63 (N.J. 1997). (recognizing "the general legislative intent in the Act to establish immunity as the general rule"). Indeed, the Comment to the statute explains that the verbal threshold applies to "non-objective types of damages" in light of "the economic burdens presently facing public entities." N.J.S.A. 59:9-2(d) cmt. (noting the Legislature's "policy judgment" that limits recovery "for non-objective types of damages, such as pain and suffering," where there is documentation of "medical expenses [that] exceed $1,000" (now $3,600)); *see Collins v. Union Cnty. Jail*,

---

[7] Although New Jersey's Model Civil Jury Charges are only "a framework for building a set of jury instructions," the responsible committee "attempts to keep the model charges current with the state of the law." New Jersey Courts, *Model Civil Jury Charges*, https://www.njcourts.gov/model-civil-jury-charges [https://perma.cc/8A3L-L6KL].

15

696 A.2d 625, 627-28 (N.J. 1997)[8] (referencing the Comment to support its interpretation of the Legislature's intent to "preclude recovery for pain and suffering" unless "the medical expenses exceed" the threshold).

Moreover, since enactment, the Legislature has amended the statute twice, most recently in 2025 by carving out cases involving sexual assaults or similar acts. P.L. 2025, c. 29. The Legislature was therefore fully aware of the law's scope but chose to maintain the core structure of the statute, preserving the monetary requirement for all other cases. *Id.*; *see N.J. Div. of Child Protec. & Permanency v. D.C.A.*, 304 A.3d 660, 669 (N.J. 2023) (recognizing that New Jersey "appl[ies] the well-established canon of statutory interpretation that the Legislature is presumed to be aware of judicial construction of its enactments" (citation modified)); *C.W. v. Roselle Bd. of Educ.*, 351 A.3d 175, 185 (N.J. Super. App. Div. 2026) (explaining that before the 2025 amendment, the TCA "mandated a monetary threshold" to pursue non-economic damages).

Case law further supports the understanding that the verbal threshold applies to all non-economic damages arising from injury to the person. The New Jersey Supreme Court has explained that the TCA "controls when and under what circumstances public entities are liable for non-economic damages such as pain and suffering." *Knowles v. Mantua Twp. Soccer Ass'n*, 823 A.2d 26, 28-29 (N.J. 2003). The Legislature intended that the law be applied broadly. *See Brooks*, 696 A.2d at 622 ("Both the history and purpose of the Act suggest that the Legislature intended a chary interpretation of a public entity's exposure to liability."). Accordingly, New Jersey courts have applied the verbal threshold for broader categories of non-economic loss. *See, e.g.*, *Newsham v. Cumberland Reg'l High Sch.*, 797 A.2d 878, 881 (N.J. Super. App. Div. 2002) ("The Tort Claims Act . . . limits the availability of tort recoveries from public entities for non-economic loss."); *Lopez v. Stys*, No. A-2571-21, 2023 WL 7014337, at *4-5 (N.J. Super. App. Div. Oct. 25, 2023) (referring to noneconomic damages generally).

Furthermore, the verbal threshold exists to "weed[] out claims for 'subjectively measured damages for pain and suffering, which are not compensable by the Tort Claims Act.'" *Nieves v. Off. of the Pub. Def.*, 230 A.3d 227, 235 (N.J. 2020) (quoting *Ayers v. Jackson Twp.*, 525 A.2d 287, 294 (N.J. 1987)). Although the *Nieves* court limited its holding to legal malpractice damages, it referenced the Restatement (2d) of Torts § 905 (Am. L. Inst. 1979), which articulated two types of non-economic damages—bodily harm and emotional distress—both of which are "considered pain and suffering under the TCA." *Id.* at 237; *see also id.* at 237-38 ("It is either economic damages or a pain and suffering award."). This broad construction of "pain and suffering" under the TCA is longstanding under New Jersey law. *See Ayers*, 525 A.2d at 296 (endorsing the conclusion that "the subjective symptoms of depression, stress, health concerns, and anxiety described by the plaintiffs and their expert witness constitute 'pain and suffering resulting from any injury'

---

[8] The monetary threshold was not at issue in *Collins*, as the jury found medical expenses above the then-applicable threshold. 696 A.2d at 627.

as that phrase is used in N.J.S.A. 59:9-2(d)."). Although the *Ayers* court distinguished between emotional distress damages and quality-of-life damages, the context was a nuisance suit where the quality-of-life damages there "represent compensation for losses associated with damage to property," a different theory of liability from the harm to the person at issue here. *Id.* at 294; Pl. Reply 12.

Here, the jury's $12 million verdict in favor of Plaintiff consists exclusively of non-economic damages. *See Cuevas v. Wentworth Grp.*, No. A-3079-11T3, 2014 WL 4494166, at *19 (N.J. Super. App. Div. Sept. 15, 2014), *aff'd,* 144 A.3d 890 (N.J. 2016) ("With respect to non-economic damages specifically, it is well-settled there is no gauge for them."). Just as one jury could value Plaintiff's damages at $500,000 per year of wrongful incarceration, so too could a different jury value his damages differently. *Compare, e.g., Hicks v. City of Phila.*, No. 22-cv-00977, 2026 WL 498885, at *1 (E.D. Pa. Feb. 23, 2026) (noting a jury finding of $3 million for 19 years of wrongful incarceration), *with Morant v. City of New Haven*, No. 22-cv-00630 (May 29, 2026) (ECF No. 569), at 6 (finding $38 million for more than 21 years of wrongful incarceration). Indeed, New Jersey law *prevents* the parties from arguing for a specific damages total, precisely because the determination of damages is within the jury's exclusive prerogative. *See Weiss v. Goldfarb*, 713 A.2d 427, 433 (N.J. 1998) (recognizing that New Jersey "public policy has prohibited counsel in negligence cases from requesting a jury to return a damage award in a specific amount").

In sum, text, legislative intent, precedent, and policy all support the conclusion that the verbal threshold applies to all non-economic damages. Therefore, Plaintiff's $12 million non-economic damages verdict cannot be imposed on the City, which successfully invoked the verbal threshold in its Rule 50(a) motion. Plaintiff's Motion is **denied**.

## IV.    CONCLUSION

Based on the foregoing, the Court **DENIES** the Motions. An appropriate order follows.

DATE: July 7 , 2026

WILLIAM J. MARTINI, U.S.D.J.

17